437 So.2d 1218 (1983)
Wallace W. COBB
v.
STATE of Mississippi.
No. 53924.
Supreme Court of Mississippi.
September 28, 1983.
*1219 Jack Parsons, Parsons & Matthews, Wiggins, for appellant.
Bill Allain, Atty. Gen. by Catherine Walker Underwood, Asst. Atty. Gen., Jackson, for appellee.
Before BROOM, P.J., and DAN M. LEE and PRATHER, JJ.
BROOM, Presiding Justice, for the Court:
Probation terms and their constitutionality are at issue in this appeal from the Circuit Court of Stone County, the Honorable J. Ruble Griffin presiding. Wallace W. Cobb, defendant, pled guilty to the charge of aggravated assault: shooting his brother's son. Sentence imposed by Judge Griffin was 12 years imprisonment. However, on January 15, 1982, the Judge suspended the sentence and put defendant Cobb on probation for five years conditioned that Cobb "leave Stone County" and stay "125 miles ..." away from the county. Additionally, the probation order permitted Cobb to "go to Stone County to take care of personal reasons [sic]" upon his notifying the sheriff upon such intentions. Other not unusual terms appear in the probation order.
Subsequently, on February 11, 1982, Cobb filed a motion to correct the sentence or modify it, asserting
[T]he provision requiring that your Petitioner leave Stone County, Mississippi, and remain at a distance of not less than 125 miles and that your Petitioner remain within Neshoba County, Mississippi, is a violation of the U.S. Constitution and specifically a violation of the First, Fifth and Fourteenth Amendments of the U.S. Constitution.
Supporting his motion, probationer Cobb presented the testimony of his wife, Mary Ann Cobb, who related the problems they were experiencing on account of her husband not being able to live in the household with her and their daughter. She testified that she had 24 years service with the U.S. Forestry Service, and was not able to transfer to where her husband might live in another locality because of an existing freeze on employment. She stated that her husband has a back injury and is living with relatives, but that their family has been torn apart. They live out in the country without close neighbors, and she is afraid after dark. She has lost weight and for her to go to Neshoba County, where her husband is presently residing, is too far and too expensive for her. Further, since the incident no problems have arisen between her husband and his brother.
Other testimony introduced by Cobb was given by his pastor, Rev. Elton Brown, minister of the First United Methodist Church in Stone County. He gave his opinion that should "Mr. Cobb be permitted to live at home" there would be no problem or danger created in the community. Reverend Brown thought it would be best if the Cobb family could live together. At the hearing of the motion, neither probationer Cobb, his brother or nephew testified.
First argument asserted is that "The two (2) conditions imposed on the sentence do not bear a reasonable relationship to the purposes of probation." Cobb argues that any condition requiring separation from his family "bears no reasonable relationship to the purpose of probation" and should not be upheld.
Mississippi Code Annotated § 47-7-35 (Supp. 1982) provides that courts shall determine the terms and conditions of probation and may order the probationer to "(g) Remain within a specified area;" In providing that probationer Cobb would remain 125 miles from Stone County, the record shows the following reasoning of the lower court:
BY THE COURT:
I am going to require you to leave Stone County. And I want you to leave *1220 right away. Uh, Mrs. Cobb is from Neshoba County. I am not going to tell you that you've got to live in Neshoba County. The only thing I'm telling you is that you've got to stay out of Stone County. I want you to, uh, in order to, uh, to make sure it's that far away, I am going to impose the condition that you be gone by a week from today from Stone County a distance of not less than one hundred and twenty-five miles. I estimated in my mind that that's about how far it is from Wiggins to Philadelphia, uh, and that can be Neshoba County... .
... .
Or any other County within that range. Of course, I assume that it's going to be, according to be, according to the pre-sentence report, it will be Neshoba County. That's where Mrs. Cobb is from and I think that she has expressed some desire to return there. Uh, if she leaves and she's going to have to leave, if she stays with Mr. Cobb; that's it.
Cases cited by Cobb in his brief are factually distinguishable from the present case. We think the peculiar circumstances of this case justify the conditions complained of and do not show an abuse of discretion by Judge Griffin. According to the trial judge, the ends of justice and the best interests of the public as well as the defendant would be served by the suspension of sentence and imposition of the probation conditions. Recognizing that Cobb had an uncontrollable temper, the court related this to the community, and stated,
... Uh, I wish that it would be such that you and your brother could get back on speaking terms and you all could be friends as well as brothers, or brothers like you should be. Uh, but until you learn to control your temper, I don't think, Wallace, that that is likely.
I read the presentence report and I am convinced that you, that this was totally unnecessary, your shooting this young man. I'm glad he's alive and doing well. Uh, I'm convinced that you would be sitting in Jail now, if he had of died, waiting for the Supreme Court to decide what to do about your life sentence you received for murder. And that, that's a shame that a man with your character, your general character, would get himself into something like this, hurt somebody, over something that amounted to nothing really. Boys, kids threw rocks when they went down the road. They have been doing that ever since we've had automobiles and they're going to be doing it from now on. But, they grow up. People don't have to shoot them.
I won't lecture you any further, of course, the only thing to have done was to have approached your brother about that and let him chastise his own children. And I think if you all had gone about it in a brotherly manner, that's what would have happened, instead of these fits that you get into.
In dealing with Cobb's motion to modify the terms of probation, Judge Griffin noted that Cobb's house was only three-eights of a mile from his brother's. The court stated:
BY THE COURT: ... I do think I have the power to change, the jurisdiction, to remove probation altogether... . I will make everybody here a solemn promise that if he and his brother and his family can get all their difficulties straightened out, I will do that, and the burden is going to be on Wallace, because he is the one that stands with his foot in the trap.
Upon the record as made and presented, we find that the conditions imposed by the sentencing judge were reasonably related to Cobb's circumstances and his intended rehabilitation. The court recognized that Cobb's family had experienced considerable trouble, and Cobb had been involved in a shooting of his nephew who lived near Cobb's place of residence in Stone County. Upon these facts, we are unable to say that removing him from the area was unreasonable or arbitrary. At oral argument, counsel stated that Cobb's brother refused to come into court in support of the motion to modify the probation terms.
Second argument is that "the two (2) conditions of the sentence violate public policy and defeat the rehabilitative purpose *1221 of probation." A Georgia case, State v. Collett, 232 Ga. 668, 208 S.E.2d 472 (1974), involved the banishment of the defendant from a 7-county area in Georgia. There the court noted that the applicable statute granted the trial court authority to require a probationer to remain within a specified location. The court stated:
The defendant in the present case has made only a general attack on the present sentence as being illegal, contending it is per se violative of public policy. There has been no showing in this case that the imposed condition to remain outside the seven specified counties for the period of the sentence (12 months) is unreasonable or otherwise fails to be a logical relationship to the rehabilitative scheme of the sentence pronounced for this drug crime... .
208 So.2d at 474.
In Re Buehrer, 50 N.J. 501, 236 A.2d 592 (1967), recognized that a probationer may have more than mere inconvenience when placed on probation. There the New Jersey court so wisely stated that probation is not intended to be without some pain and inconvenience to the probationer. Some amount of punitive aspects of probation serve the public interest as well as the probationer's interest.
Here trial judge Griffin noted that he could have sent Cobb to the penitentiary but "didn't want to do that." He noted that he thought it was best to get Cobb
... away from his brother and family... . I just don't think I ought to change it at this early stage. I can appreciate the predicament they are in; God knows I don't want to be mean to them, but compared to what I could have done, I think I have been relatively kind... .
Thirdly, Cobb argues that "the two (2) conditions on the sentence as imposed violates Appellant's rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution." Cobb's brief concedes:
Courts have uniformly held that constitutional rights may be abridged by conditions of probation, however, there must be some reasonable relationship to the Appellant's past or future criminality or to the rehabilitative purpose of probation.
Again, the cases relied upon by Cobb in his brief are factually distinguishable and not controlling here.
Instead of being a matter of right, it is by grace that probation is granted a defendant, and within his sound judicial discretion the trial judge may fix reasonable conditions of parole and probation. Owen v. Kelley, 681 F.2d 1362 (11th Cir.1982). We are unable to agree that the conditions complained of violate the constitutional provisions cited in the appellant's brief. Here the record shows that the trial judge carefully and meticulously explained to Cobb his rights which shows that Cobb understood that he could be sentenced to 20 years in the penitentiary upon the indictment to which he pled guilty. As found by the trial judge, Cobb voluntarily and knowingly pled guilty and specifically acknowledged his guilt. Then the court deferred sentence, so that the Mississippi Department of Corrections could "conduct an investigation of this defendant" and present a presentence report to the trial court, all of which presumably was done. The judgment of the court fixing the sentence and conditions here complained of shows that Cobb (while represented by counsel) signed the judgment underneath the following language: "I accept the above probation in accordance with the terms thereof". Upon the record made, we do not agree that the trial judge, in fixing the terms of Cobb's probation, was unreasonable, arbitrary, or in any sense violated public policy or his authority under the pertinent statutes. Indeed, we find his actions were reflective of commendable compassion, and were judicially sound.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.