LEE, J.,
for the Court.
¶ 1. This case is on appeal from the Madison County Youth Court where the appellant, a delinquent minor, was found guilty of shoplifting. The appellant, K.N.L., was a seasonal employee at the McRae’s retail store in the Northpark Mall in Ridgeland; she was fourteen years-old at the time of her employment. The evening of November 21, 1999, two of her friends visited her at the store. One friend left and the remaining girl, K.C., stayed with K.N.L. while she worked. During this time, K.N.L. and K.C. went upstairs to the children’s department and collected several items of children’s clothing. Later, K.C. went back downstairs to a dressing room. While in the dressing room, she placed the baby clothes into a McRae’s bag she had in the dressing room with her. She subsequently left the store and was apprehended in the mall parking lot by a security officer who had monitored her actions on a security camera. K.C. confessed her involvement in the shoplifting scheme and also claimed that K.N.L. had orchestrated the theft; K.N.L. denies any involvement in the scheme.
¶ 2. In an order signed October 2000, K.N.L. was adjudged to be a delinquent child for the shoplifting offense. After a hearing, K.N.L. was ordered to be placed in a state-supported training school for one year, which would be held in abeyance pending her performance of certain other terms. Those terms included that she get no unexcused school absences, that she meet with a youth counselor, pay restitution to the store, and have no contact with K.C. or other persons her parents deemed unsuitable. Among other general restrictions upon her behavior, she was also prohibited from going to the Northpark Mall or to any McRae’s store for one year, prohibited from obtaining her driver’s license without the court’s permission, and was ordered to perform ten hours of community service.
¶ 3. With this appeal, K.N.L. asks this Court to reverse and render a decision in her favor due to insufficiency of evidence or, in the alternative, to void certain restrictions placed upon her behavior because they were beyond the authority of the judge.
DISCUSSION OF THE ISSUES
I. WAS THE EVIDENCE SUFFICIENT TO PROVE THE APPELLANT WAS GUILTY OF THE CRIME OF SHOPLIFTING?
¶ 4. With her first issue, K.N.L. claims that the evidence presented was insufficient to prove her guilt. Our standard of review with regard to the decision of a youth court was described in S.B. v. State, 566 So.2d 1276 (Miss.1990):
[I]n reviewing the evidence we do not proceed de novo. Rather, our scope of review is limited. We consider all of the evidence before the Youth Court in the light most favorable to the State. If the evidence so considered is opposed to the adjudication of the Youth Court with such force that reasonable men could not have found as the Youth Court did beyond a reasonable doubt, we must reverse. On the other hand, if there is substantial evidence in the record supporting the adjudication of the Youth Court, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, the Youth Court might reasonably have ruled as it did, we must affirm.
*1247 S.B. v. State, 566 So.2d at 1278 (citations omitted). In reviewing whether or not the evidence was sufficient to convict, we look to the specific evidence in this case which consisted primarily of the testimonies of three witnesses: McRae’s Loss Prevention Manager Jeff Caldwell, K.C., the accomplice, and K.N.L. A surveillance video was also introduced into evidence and was played during the testimonies of each witness. The video depicted KN.L.’s and K.C.’s actions as recorded on the video the day of the incident.
¶ 5. We first review the testimony of Jeff Caldwell, the store’s loss prevention manager. Caldwell testified that another employee had previously alerted him that K.N.L. might be shoplifting while she was on duty. Therefore, Caldwell made an effort to watch KN.L.’s actions on the security cameras. Caldwell testified that the day of the theft, K.N.L. and K.C. walked around the store, eventually ending up in the children’s section where each gathered several items of children’s clothing. They returned to the junior’s department where K.N.L. worked, and K.C. then went into the fitting room with the merchandise that both had gathered. When K.C. emerged from the fitting room, she was carrying no merchandise, but did have a McRae’s bag with her. She then left the mall, but was stopped and questioned in the parking lot by a security officer. Both girls were called into Caldwell’s office to explain the disappearance of approximately $519 worth of merchandise. K.C. explained that she had agreed with K.N.L. to take the merchandise for the two to divide later. At that point, K.N.L. denied ever having made such agreement.
¶ 6. K.C. testified that she and K.N.L. went together to the children’s department to pick out clothes for KN.L.’s niece and nephew. The two then went back downstairs to where K.N.L. was working, and K.N.L. gave all the clothes she had gathered to K.C. who then took the clothes into the dressing room. K.C. testified that while she was in the dressing room, K.N.L. came in to give K.C. a McRae’s bag that she presumes came from behind the counter. K.C. also stated that while she was in the dressing room, K.N.L. came in to help her hide the clothes in the bag. K.C. testified that at some point K.N.L. also gave her the keys to her car so K.C. could stash the bag in KN.L.’s car. After she was apprehended outside the store and brought back to the security office, K.C. says she gave K.N.L. her keys back while the two were sitting in the office.
¶ 7. K.N.L. claimed that she had no agreement with K.C. to commit the theft. She testified that she had helped K.C. pick out clothing from the children’s department for KC.’s baby, and that K.C. had brought the clothing back downstairs where she was going to go through all the items they collected and would pick out which items she wanted. As soon as the two arrived downstairs, K.N.L. says they parted ways. K.N.L. denies ever having given her keys to K.C., as K.C. alleges, and also denies giving K.C. the bag in which she placed the clothing.
¶ 8. KN.L.’s argument hinges on the rule that the uncorroborated testimony of an accomplice is sufficient to convict. James v. State, 756 So.2d 850 (¶ 3) (Miss.Ct.App.2000). She claims that K.C.’s incriminating testimony alone is only sufficient to convict if it is reasonable, not improbable, self-contradictory or substantially impeached. See Jones v. State, 740 So.2d 904, 910 (Miss.1999). We recognize this rule of law; however, we also note that K.C.’s testimony was not uncorroborated — Caldwell’s testimony implicated K.N.L. as did the surveillance video which clearly showed KN.L.’s actions. We also have no evidence to show that KC.’s testimony is unreasonable or improbable, as would invalidate K.C.’s testimony for the *1248 purposes of conviction were it standing alone. In addition to Caldwell’s testimony and the presentation of the surveillance video which detailed the actions of the two girls, we recognize that the judge had the opportunity to review the credibility of each witness, plus had the opportunity to review the videotape depicting the actions at the store that evening. Taking all this evidence together in a light favorable to the State, we find that the judge committed no error in reaching the decision that he did. As stated before, we are not to review the evidence de novo, but are to review the evidence in a light favorable to the State. S.B. v. State, 566 So.2d at 1278. Having done so, we find that the evidence does support the finding of guilt, and the judge did not abuse his discretion. We affirm on this issue.
II. DID THE COURT GO BEYOND ITS AUTHORITY IN ORDERING THAT CERTAIN RESTRICTIONS BE PLACED UPON THE APPELLANT’S BEHAVIOR?
¶ 9. Upon finding K.N.L. guilty of shoplifting, the judge placed several restrictions upon her behavior. The two terms to which she now objects include the following: “She is prohibited from going to the following locations: Northpark Mall or McRae’s regardless of location for a period of one year ... She is prohibited from obtaining or applying for a driver’s license or permit without permission of the court.” K.N.L. argues that these two restrictions are beyond the court’s authority since they did not serve any compelling interest or the ends of justice.
¶ 10. We initially note that the two matters raised with this second issue have essentially become moot. The order stated that KN.L.’s commitment to training school would be held in abeyance for one year subject to the conditions contained in the order, which was signed on October 4, 2000. Since these conditions all pertained to the one-year term of abeyance, we surmise that the conditions expired at the end of that one year period, which would have been October 4, 2001. Nonetheless, we briefly discuss the two restrictions K.N.L. contests.
¶ 11. First, we review the restriction on KN.L.’s presence at the North-park Mall and at McRae’s stores. The “banishment” provision in the present case consisted of the judge’s order that K.N.L. stay away from Northpark Mall and McRae’s stores for one year. K.N.L. cites two criminal cases in which the appellant had been banished geographically from the communities in which the crimes each took place. See McCreary v. State, 582 So.2d 425 (Miss.1991) (supreme court found order too broad which restricted appellant, who was convicted of rape, to be banished from the State of Mississippi except to visit his children twice yearly); Cobb v. State, 437 So.2d 1218 (Miss.1983) (supreme court found reasonable the lower court’s order that appellant, who was convicted of aggravated assault, stay 125 miles away from the county in which the crime took place).
¶ 12. Having reviewed the cases cited by K.N.L., we find a more relevant and specific authority for this situation in Miss. Code Ann. § 43-21-605 (Rev. 2000), which cites the court’s guidelines in a matter involving a juvenile delinquent.
(1) In delinquency cases, the disposition order may include any of the following alternatives: ... (b) Place the child in the custody of the parents, a relative or other persons subject to any conditions and limitations, including restitution, as the youth court may prescribe; (c) Place the child on probation subject to any reasonable and appropriate conditions and limitations, including restitution, as the youth court may prescribe ....
*1249 Miss.Code Ann. § 43-21-605 (Rev. 2000) (emphasis added).
¶ 13. We review the judge’s decision to see whether or not his restrictions were reasonable and appropriate conditions, as required by the above cited code section. We have no other “banishment” cases on record with regard to delinquent offenders, but those few cases of record all stress the rule from Cobb which requires such banishment provisions to bear “some reasonable relationship to the Appellant’s past or future criminality or to the rehabilitative purpose of probation.” Cobb, 437 So.2d at 1221. We look to the judge’s actions in general with regard to the “reasonableness” requirements described both in Cobb and in Section 43-21-605 cited above and conclude that the prohibition against K.N.L. going to the mall or to a McRae’s store is reasonable and appropriate. K.N.L. was a growing teenager, and to allow her access to the mall and to the store at which she had been employed and from which she stole could needlessly present a temptation for her to steal again during the next year. We affirm the judge’s finding on this point.
¶ 14. K.N.L. also argues that the restriction concerning her driver’s license was beyond the authority of the court. She cites to Section 43-21-605 which permits the court to “[sjuspend the child’s driver’s license by taking and keeping it in custody of the court for not more than one (1) year.” The judge’s restriction stated, “She is prohibited from obtaining or applying for a driver’s license or permit without permission of the court.” Reading the judge’s language, we find no “expiration period” for this restriction which we presume could keep K.N.L. under the judge’s supervision indefinitely with regard to her obtaining a driver’s permit or license. Standing alone, this restriction initially appears overbroad. However, when read in conjunction with the sentence, it is clear that this restriction, in addition to the fourteen other restrictions listed in the order, is only a condition which is in place for the one year abeyance term and not intended to apply to an indefinite period of time. Thus, we find no error with this restriction and affirm.
¶ 15. THE JUDGMENT OF THE MADISON COUNTY YOUTH COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
MeMILLIN, C.J., KING and SOUTHWICK, P.JJ, BRIDGES, THOMAS, IRVING, MYERS, CHANDLER and BRANTLEY, JJ, concur.