# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CT-01785-SCT

*RONNIE MACKEY a/k/a RONALD FANTAE MACKEY*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

DATE OF JUDGMENT:                    12/20/2007
TRIAL JUDGE:                         HON. ROBERT B. HELFRICH
COURT FROM WHICH APPEALED:           FORREST COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:              PRO SE
ATTORNEY FOR APPELLEE:               OFFICE OF THE ATTORNEY GENERAL:
                                     BY: DEIRDRE McCRORY
DISTRICT ATTORNEY:                   JON MARK WEATHERS
NATURE OF THE CASE:                  CIVIL - POST CONVICTION RELIEF
DISPOSITION:                         REVERSED AND RENDERED - 06/07/2010
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC**.

**DICKINSON, JUSTICE, FOR THE COURT**:

*We have discovered that . . . to banish the knight does not alleviate the suffering of the peasant.*
                                                          – C.S. Lewis

¶1.     This is a banishment case in which the Circuit Court of Forrest County issued a suspended sentenced of thirty years and then ordered the defendant not to come within one hundred miles of Hattiesburg.  Upon learning the defendant had violated the banishment order, the trial court revoked the suspension of the sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.     Ronnie Mackey pleaded guilty to one count of transfer of a controlled substance. The Circuit Court of Forrest County, sitting in Hattiesburg, followed the State's recommendation and sentenced him to a thirty-year prison term, but suspended the entire sentence.  The trial court imposed several requirements during the period of the suspended sentence, one of which was that, within forty-eight hours, Mackey was to leave Hattiesburg and, for thirty years, remain outside a circle with a radius of one hundred miles, centered on Hattiesburg.

¶3.     Despite the court's ruling, and for reasons unexplained in the record, Mackey (involuntarily) remained in jail for approximately fifty hours after sentencing.  Thus, when he was released from jail, he was already in violation of the banishment order.  He was still in town six days later when he was spotted by a police officer and arrested for violating the condition of his suspended sentence.

¶4.     The trial court revoked the suspension and imposed the full thirty-year sentence. Mackey filed a motion for post-conviction relief (PCR), which the trial court dismissed without an evidentiary hearing.  The Court of Appeals affirmed the trial court's dismissal of Mackey's motion for PCR.  He then filed a petition for a writ of certiorari, which we granted.

## ANALYSIS

¶5.     Mackey presents seventeen issues on appeal.  However, because we find one issue — the banishment condition of his suspended sentence — dispositive, we shall address it and decline to address the others.  We do not disturb a trial court's factual findings unless they are found to be clearly erroneous.  However, we apply a de novo review to questions of law.

2

***Brown v. State***, 731 So. 2d 595, 598 (Miss. 1999) (citing ***Bank of Miss. v. S. Mem'l Park, Inc.***, 677 So. 2d 186, 191 (Miss. 1996)).

**I.**

**Banishment**

¶6.    When a trial judge suspends all or part of a criminal defendant's sentence, the judge is free to impose lawful, reasonable conditions which must be met during the period of the suspended sentence.  In the case we review today, the trial judge suspended Mackey's sentence, and then, as a condition of his suspended sentence, ordered him to leave town and remain at least one hundred miles from Hattiesburg.  Such a condition is commonly known as banishment.

¶7.    In considering the paucity of banishment cases in Mississippi, this Court has expressed serious concerns.  Although this Court has not specifically forbidden banishment, prior decisions clearly establish that arbitrary banishment will not be upheld; that is, justification for the banishment must clearly be established in the record.

¶8.    In ***Cobb v. State***, 437 So. 2d 1218 (Miss. 1983), the defendant, Cobb, pleaded guilty to aggravated assault.  The trial court sentenced him to twelve years imprisonment, and "suspended the sentence and put defendant Cobb on probation for five years conditioned that Cobb 'leave Stone County' and stay '125 miles . . . away' from the county."  ***Id***. at 1219.  Cobb appealed the banishment, arguing that it did not "'bear a reasonable relationship to the purposes of [his] probation.'"  ***Id***.  In reviewing the record, however, this Court found that the trial judge had articulated a reasonable, factual basis for the banishment.  Specifically,

3

the trial judge stated that Cobb (who had shot his brother's son[1]) had an uncontrolled temper, and he lived close to his brother in Stone County. The **Cobb** Court stated:

> Upon the record as made and presented, we find that the conditions imposed by the sentencing judge were reasonably related to Cobb's circumstances and his intended rehabilitation. The court recognized that Cobb's family had experienced considerable trouble, and Cobb had been involved in a shooting of his nephew who lived near Cobb's place of residence in Stone County. Upon these facts, we are unable to say that removing him from the area was unreasonable or arbitrary.

*Id*. at 1220.

¶9.     In *McCreary v. State*, 582 So. 2d 425 (Miss. 1991), this Court expressed grave reservations concerning banishment orders. After the defendant, McCreary, pleaded guilty to a charge of rape, the trial judge accepted the guilty plea, but failed to impose a sentence. Instead, he stated that the sentence would be

> taken under advisement . . . from day to day and term to term, [and while the sentence remained] under advisement, [McCreary was banished from the State of Mississippi] for a period not to exceed two years, [following which], at some future time . . . [his case would] be finally disposed of as a misdemeanor.

*McCreary*, 582 So. 2d at 426. When McCreary was found in the State of Mississippi in violation of his banishment, the trial judge sentenced him to twenty years in the custody of the Mississippi Department of Corrections.

¶10.    McCreary filed a motion for PCR, claiming his guilty plea was coerced and otherwise involuntary.[2] The circuit court denied his petition, and McCreary appealed, arguing only that

---

[1] Fortunately, the boy survived the shooting.

[2] In his PCR petition, McCreary did not raise the issue of banishment.

4

his plea was coerced and otherwise involuntary. The trial court made no record of the hearing on McCreary's PCR motion.

¶11. In reversing the trial court's denial of McCreary's PCR motion and remanding for a hearing, this Court stated: "On the record and the pleadings, we cannot safely conclude that McCreary will be unable to show that his guilty plea was unknowing and involuntary." *Id*. at 427.

¶12. Although the Court's reversal was based on this issue of whether *vel non* McCreary's plea was voluntary, this Court also addressed the trial court's failure to sentence McCreary following his guilty plea, stating that it found no authority to support the trial court's disposition of the case. *Id*. In addressing the banishment order, this Court characterized it as "of particular concern." *Id*. The *McCreary* Court, citing *Cobb* with approval, stated:

> In *Cobb*, the Court satisfied itself *from the record* that the banishment provision bore a reasonable relationship to the purpose of probation; that the ends of justice and the best interest of the defendant and the public would be served; that public policy was not violated and the rehabilitative purpose of probation was not defeated; and that Cobb's rights under the First, Fifth and Fourteenth Amendments to the United States Constitution were not violated. 437 So. 2d at 1219-21.[3]

---

[3] Other authority cited in *McCreary* includes: *Wyche v. State*, 197 Ga. App. 148, 397 S.E.2d 738 (Ga. Ct. App. 1990) (banishment condition must serve some rehabilitative function); *Kerr v. State*, 193 Ga. App. 165, 387 S.E.2d 355 (Ga. Ct. App. 1989) (same); *People v. Pickens*, 186 Ill. App. 3d 456, 134 Ill. Dec. 746, 542 N.E.2d 1253 (Ill. App. Ct. 1989) (banishment provision must bear reasonable relation to offense, provided defendant may apply for permission to enter prohibited area for legitimate reasons); *U.S. v. Cothran*, 855 F.2d 749 (11th Cir. 1988) (banishment provision must bear reasonable relation to offense and rehabilitation); *Markley v. State*, 507 So. 2d 1043 (Ala. Crim. App. 1987) (test is whether the conditions, including any geographic restrictions, are designed to meet the ends of rehabilitation and protect the public); *People v. Watkins*, 193 Cal. App. 3d 1686, 239 Cal. Rptr. 255 (Cal. Ct. App. 1987) (same); *U.S. v. Abushaar*, 761 F.2d 954 (3d Cir. 1985) (same); *State v. Morgan*, 389 So. 2d 364 (La. 1980) (same).

*Id*. at 427 (emphasis added). Then, in addressing banishment orders in general, the

*McCreary* Court expressed its view that

> banishment from a large geographical area, especially outside of the State, struggles to serve any rehabilitative purpose, and implicates serious public policy questions against the dumping of convicts on another jurisdiction.

*Id*. at 427-28 (*citing U.S. v. Abushaar*, 761 F.2d 954, 959-60 (3d Cir. 1985); *Rutherford v.*

*Blankenship*, 468 F.Supp. 1357, 1360-61 (W.D. Va. 1979)).

¶13.     In *Temple v. State*, 671 So. 2d 58 (Miss. 1996), this Court — expressing disfavor with

banishment provisions imposed on a defendant — stated:

> These conditions are unenforceable because they are not contained in the written judgment entered with the clerk, and if they were part of the judgment, this Court would be inclined to strike such conditions.

*Id*. at 59.

¶14.     Following the *Cobb*-*McCreary* precedent, the Court of Appeals — striking down a

banishment provision because of the lack of any on-the-record evidence supporting the

factors discussed in *Cobb* and its progeny — stated:

> [T]he trial judge failed to articulate the benefits of Weaver's banishment. In order for the instant case to fall directly within the scope of the Mississippi Supreme Court's decision in *Cobb*, the benefits of Weaver's banishment must be established and *on the record*. Herein lies the error in the lower court's decision, and the basis for our reversing and remanding this case.

*Weaver v. State*, 764 So. 2d 479, 480-81 (Miss. Ct. App. 2000) (emphasis added). The Court

of Appeals did not remand the case for resentencing, but rather remanded it for clarification

of an ambiguity in the sentencing order concerning probation. *Id.* at 481 ("On remand, the

trial court needs to clarify its sentencing order.").

6

¶15. We now turn to the trial judge's banishment order in this case, which stated:

It is further adjudicated and the court so finds that the banishment provision herein bears a reasonable relationship to the purposes of the suspended sentence or probation, that the ends of justice and the best interest of the public and the Defendant will be served by such banishment during the period of the suspended sentence, that the banishment provision of the suspended sentence does not violate the public policy of the State of Mississippi, that the banishment provision of the suspended sentence herein does not defeat the rehabilitative purpose of the probation and/or suspended sentence, and such provision does not violate the Defendant's rights under the First, Fifth, and Fourteenth Amendments of the United States Constitution.

¶16. In reviewing this order, we note that its language tracks, virtually verbatim, the following language from *McCreary* in which this Court explained why the *Cobb* banishment was not reversed:

In *Cobb*, the Court satisfied itself *from the record* that the banishment provision bore a reasonable relationship to the purpose of probation; that the ends of justice and the best interest of the defendant and the public would be served; that public policy was not violated and the rehabilitative purpose of probation was not defeated; and that Cobb's rights under the First, Fifth and Fourteenth Amendments to the United States Constitution were not violated. 437 So. 2d at 1219-21.

*McCreary*, 582 So. 2d at 426 (emphasis added).

¶17. The trial judge's recitation of the *McCreary* factors, however, is not dispositive. We also must determine whether the trial court "satisfied itself from the record," *id.*, that the factors were present.[4] In its decision, the trial court in *Cobb* relied on evidence in the "record

---

[4] *See, e.g., United States v. Scheer*, 30 F. Supp. 2d 351, 353 (E.D.N.Y. 1998), in which the court made detailed findings on the record that the order that defendant refrain from traveling to Florida "is directly related to the rehabilitative goal of probation" and "that the travel restriction

as made and presented" that established that "Cobb's family had experienced considerable trouble, and Cobb had been involved in a shooting of his nephew who lived near Cobb's place of residence in Stone County." *Cobb*, 437 So. 2d at 1220.

¶18.    The trial court conducted Mackey's plea hearing — and the plea hearing for seven other defendants in unrelated cases — at the same time. Most of the questions were asked of all eight defendants at the same time. We find nothing whatsoever in Mackey's answers to the trial court's questions that remotely relates to any of the *McCreary* factors.

¶19.    Immediately following the plea hearing, the trial court proceeded to sentencing. The trial court asked the prosecutor if she had a recommendation concerning sentencing. The prosecutor replied:

> Yes, Your Honor. The State understands that Mr. Mackey has one relative who lives in Forrest County. His other relatives do not live here. That he's estranged from that one relative, and based upon that, the state would recommend that Mr. Mackey be sentenced to thirty years in the custody of the Mississippi Department of Corrections with all but time served suspended on his good behavior in compliance with the terms and conditions of the order of conviction, one of which is that he depart from Forrest County within forty-eight hours and remain a distance of one hundred miles from the Forrest County courthouse during the entire thirty years of that sentence and that he pay court cost, and the State would pass Count II to the file on the condition that he comply with the condition of Count I.

¶20.    The only statement in the prosecutor's presentation which remotely could have been viewed by the trial judge as justification for banishment was the representation that Mackey had one relative in Forrest County from whom he was estranged. We find this single, benign

---

promotes the protection of the public."

8

reference to an "estranged relative" to be a woefully inadequate factual basis for banishment under *McCreary* factors.

¶21.    Furthermore, because the trial court's order includes no factual findings supporting any of the *McCreary* factors, we have meticulously reviewed the balance of the record to glean any scrap of evidence available to the trial court in reaching its decision to banish Mackey.  We find none.

**III.**

¶22.    Today, we reaffirm this Court's previous view that "banishment from a large geographical area, especially outside of the State, struggles to serve any rehabilitative purpose, and implicates serious public policy questions against the dumping of convicts on another jurisdiction."  *McCreary*, 582 So. 2d at 428.  One reason for our concern with banishment orders is that they preclude supervision.  In other words (as provided in *McCreary* and *Cobb*), compelling reasons must be offered to justify allowing a defendant convicted of a serious criminal offense to leave the jurisdiction unsupervised, as opposed to incarceration or keeping the defendant in the jurisdiction of the court, with supervision.

¶23.    We do not wish our opinion today to imply that all banishments are improper or disfavored.  A carefully crafted banishment from a small geographic area may very well serve a substantial and legitimate concern. Furthermore, banishment from an area comprised of a county, or several counties, allows supervised probation by the Mississippi Department of Corrections.  Indeed, a trial judge who wishes to "banish" a defendant from, for example, the southern six counties, may — under authority of Section 47-7-35 (which provides that

9

courts may order the probationer to "remain within a specified area") — place the defendant on supervised probation, and order the probationer to remain in the northern seventy-six counties. *See* Miss. Code Ann. § 47-7-35 (Rev. 2004). We emphasize, however, that a trial judge's reasons for ordering banishment — regardless of the size of the geographic area — must be articulated and supported in the record by a factual basis, as required by ***Cobb*** and ***McCreary***.

**CONCLUSION**

¶24. The judgment of the circuit court denying the motion for post-conviction relief is reversed, as is the affirmance of that judgment by the Court of Appeals. The trial court's order revoking Mackey's suspended sentence based on a violation of the banishment order is reversed and rendered.

¶25. **REVERSED AND RENDERED.**

**WALLER, C.J., CARLSON, P.J., LAMAR AND CHANDLER, JJ., CONCUR. CARLSON, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., DICKINSON, LAMAR AND CHANDLER, JJ. RANDOLPH, J., DISSENTS WITH SEPARATE WRITTEN OPINION. GRAVES, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J.; RANDOLPH, J., JOINS IN PART. PIERCE, J., NOT PARTICIPATING.**

**CARLSON, PRESIDING JUSTICE, SPECIALLY CONCURRING:**

¶26. While I wholeheartedly concur in the majority opinion authored by Justice Dickinson, I write separately to briefly expand the discussion in the majority opinion on the critical issue before the Court. In ***Johnson v. State***, 925 So. 2d 86 (Miss. 2006), this Court, in an 8-0

opinion, went to great lengths, once and for all and in one opinion, to explain the distinct differences between suspended sentences, supervised probation, and post-release supervision.

¶27.  For the sake of brevity, based on the reasons articulated in *Johnson*, this Court should continue to recognize and respect the unique aspects of these separate and distinct sentencing mechanisms available to our trial judges.  In today's case, Mackey was not placed on probation.  The trial judge imposed a thirty-year straight suspended sentence.  Mackey was not ordered by the trial judge to be placed under the supervision of the Mississippi Department of Corrections. Mackey was not directed to report to a MDOC probation officer. There is nothing illegal about the trial judge's imposition of a thirty-year suspended sentence. There is nothing illegal or improper with a trial judge imposing banishment as a condition of a suspended sentence, supervised probation, or post-release supervision.  Instead, in today's case, we merely have found a lack of support in the record before us to justify the trial judge's imposition of the banishment provision as a condition of Mackey's suspended sentence.   Since the trial judge's order revoking Mackey's suspended sentence is based solely on the "violation" of the banishment provision of Mackey's suspended sentence, the revocation order must be reversed, as noted by the majority.

¶28.  With this being said, I concur in today's majority opinion.

**WALLER, C.J., DICKINSON, LAMAR AND CHANDLER, JJ., JOIN THIS OPINION.**

**RANDOLPH, JUSTICE, DISSENTING:**

¶29. On the record presented, I cannot join the Majority in finding that the trial court abused its discretion in including a banishment condition in its sentencing order. However, even if one were to assume *arguendo* that the banishment condition, as part of Mackey's suspended sentence, is *ipso jure* illegal, the Majority errs by rendering a modified sentence, as opposed to vacating the guilty plea. We are not told how a defendant can knowingly, intelligently, and voluntarily plead guilty to an illegal or unlawful condition of a sentence. If illegal or unlawful, Mackey should be accorded the relief requested in his post-conviction-relief motion, that "he and the State should be returned to the positions they were in before the plea agreement was entered, as his plea was involuntary." Therefore, I respectfully dissent.

**I.**

¶30. Before this Court reverses the revocation order, it should ascertain whether the banishment condition of Mackey's suspended sentence, contained within the sentencing order, "was unreasonable, arbitrary, or in any sense violated public policy or [the trial court's] authority under the pertinent statutes." *Cobb v. State*, 437 So. 2d 1218, 1221 (Miss. 1983). No statute "prevents convicted felons from receiving a flat suspended sentence, 'so long as the sentence does not involve a period of supervised probation and does not exceed the maximum penalty statutorily prescribed for the felony offense committed.'" *Watts v. State*, 1 So. 3d 886, 888 (Miss. Ct. App. 2008), *cert. denied*, 999 So. 2d 1280 (Miss. Feb. 5, 2009) (quoting *Johnson v. State*, 925 So. 2d 86, 105 (Miss. 2006)). The *Cobb* Court stated

12

that it would look to "the record *as made and presented*," to determine if "the conditions imposed by the sentencing judge were reasonably related to [the defendant's] circumstances and his intended rehabilitation." *Id*. at 1220 (emphasis added). *See also* **McCreary v. State**, 582 So. 2d 425, 427 (Miss. 1991) ("[i]n **Cobb**, the Court satisfied itself *from the record* that the banishment provision bore a reasonable relationship to the purpose of probation . . . .") (emphasis added).[5] The **Cobb** standard is satisfied in the case *sub judice*. The sentencing order at issue stated that "the ends of justice and the best interest of the public and [Mackey] . . . [are] best served," by requiring, *inter alia*, the following "good behavior" in an effort to rehabilitate Mackey:

> (a) Commit no offense against the laws of this or any other state . . . ;
> (b) Avoid injurious or vicious habits and persons and places of disreputable or harmful character;
> (c) Work faithfully at suitable employment so far as possible;
> (d) Support his dependents . . . ;
> (e) Possess or consume no alcoholic beverages or mood altering drugs . . . .

If the banishment condition bears a reasonable relationship to Mackey's circumstances and intended rehabilitation, then there is no basis for this Court to reverse either the circuit court or the Court of Appeals. These conditions were not accorded to Mackey as "a matter of right," but by "grace" in the "sound judicial discretion [of] the trial judge . . . ." **Cobb**, 437 So. 2d at 1221. Obviously, the best interest of Mackey and the public is served by Mackey accepting the responsibility of supporting his family, while engaged in gainful employment.

---

[5]Contrary to the Majority's assertion, I find nowhere in **Cobb** or **McCreary** where "a trial judge's reasons for ordering banishment . . . must be articulated . . . ." (Maj. Op. at ¶ 23).

I fail to appreciate that the best interest of the public is served by the Majority's disposition, which results in no jail time (other than time served), to a person who was indicted on two counts for the sale of controlled substances, and one count of receipt of stolen property;[6] or, alternatively, how the best interest of the public would not be served by Mackey taking a job and supporting his wife and son. The record also indicates that Mackey is no stranger to the Forrest County Circuit Court, where he also was convicted of grand larceny in 1996. As long as the conditions were reasonable under the circumstances, they should be upheld. I conclude that they satisfy the standards imposed by *Cobb*.

¶31. Contrary to the Majority's assertion that the record contains no "scrap of evidence available to the trial court in reaching it decision to banish Mackey[,]" the record reflects fairly debatable bases for imposition of the banishment condition, which supports the best interest of justice and Mackey. (Maj. Op. at ¶ 21). Mackey swore in open court that he (1) was going to Minnesota (more than 100 miles from Hattiesburg), where he (2) could take care of his wife and son who lived in St. Louis Park, Minnesota, (3) had a job in Minneapolis, Minnesota, and (4) could continue with his life and try to better himself and his conditions.

¶32. The record is patently clear that the petitioner's wife lived in Minnesota, his child lived in Minnesota, and he had a job in Minnesota. At the time he was arrested for the revocation hearing, he claimed to have a train ticket to Chicago, Illinois. The record also

---

[6]Mackey had one charge of sale of controlled substances, along with a charge of receipt of stolen property, passed to the files.

reflects that he had only one family member living in Forrest County, from whom he was estranged, all factors ignored by the Majority in concluding that the trial judge abused his discretion for not articulating what he knew and considered in the sentencing order. Based upon the evidence "made and presented" in this record, a fair-minded jurist could conclude that the "conditions imposed by the sentencing judge[,]" including the banishment condition, were "reasonably related to" Mackey's "intended rehabilitation." **Cobb**, 437 So. 2d at 1220.

## II.

¶33. Alternatively, if one concluded, as have the Majority and Presiding Justice Graves, that the banishment condition of Mackey's suspended sentence is unlawful[7] or illegal, the proper disposition of this case is controlled by the analysis in Presiding Justice Graves's dissent.

¶34. Mackey claims, *inter alia*, that the offer of this "illegal" sentence was just too good to be passed on by any person. Under oath, he has petitioned this Court to set aside his plea of guilty, asserting it was involuntary and he should be allowed to withdraw it. No conviction can stand without a guilty plea or conviction by a jury. *See* Miss. Code Ann. § 99-19-3(1) (Rev. 2007).

---

[7]Eight judges of the Court of Appeals found it "lawful, yet lenient," with two judges joining in result only. **Mackey v. State**, – So. 3d –, 2009 WL 921117, at *2 (Miss. Ct. App. April 7, 2009). The Majority fails to address the Court of Appeals' attending analysis, i.e., "that a prisoner may not challenge the legality of a lenient suspended sentence only after he is unable to satisfy the conditions attached to that sentence." **Id**.

¶35.    The Majority's resolution fails to comport with due process.  If the Court accepts the premise that, indeed, the sentence, its conditions, and/or the revocation of the sentence were illegal, and further accepts the premise that no person would turn them down, then Mackey should receive the relief he seeks and be allowed to withdraw his plea of guilty to a crime he claims he never committed.  In short, this Court must examine this conundrum from the start.  If the plea was invalid, it follows that imposing the remaining conditions of the sentence is likewise invalid.

¶36.    Mackey asserts that his sentence is illegal, a point with which the Majority and Presiding Justice Graves agree.  Yet the Majority fails to address Mackey's assertions that he would not have pleaded guilty, but for being offered such an attractive illegal sentence.  The Majority's focus on the revocation order, versus his guilty plea and sentencing order, is placing the cart before the horse.  If Mackey is granted the relief he seeks, as opined by Presiding Justice Graves, the appropriate remedy would be to grant Mackey's plea, and allow him to withdraw his guilty plea, which was prompted by the offer of the illegal sentence.  Then Mackey could elect to negotiate a new plea or demand his right to a jury trial.  Mackey recognized this and cited *McCreary* as authority.  All he has asked from this Court was to withdraw his plea of guilt and stand before a jury of his peers to prove his innocence, a right guaranteed to him by both the United States and Mississippi Constitutions.

## III.

¶37.    For all of the aforementioned reasons, I respectfully dissent to the Majority and join the separate opinion of Presiding Justice Graves in part.

**GRAVES, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶38.    The majority of this Court finds that a condition of Mackey's guilty plea agreement and sentence is unenforceable and simply reverses his revocation. Because I would find that Mackey's plea was not knowing, intelligent, and voluntary, I respectfully concur in part and dissent in part.

¶39.    A valid guilty plea must be a voluntary and intelligent choice by the defendant. *Hannah v. State*, 943 So. 2d 20, 25 (Miss. 2006). Mackey has the burden of proving that his plea was not voluntarily, knowingly, and intelligently given. *Id*. (quoting *Gardner v. State*, 531 So. 2d 805, 810 (Miss. 1988)). The United States Supreme Court has relied on the Fifth Circuit Court of Appeals' standard of voluntariness of guilty pleas, as follows:

> (A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady v. United States*, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1969) (quoting *Shelton v. United States*, 246 F. 2d 571, 572 n. 2 (5th Cir. 1957), *rev'd* on other grounds, 356 U.S. 26, 78 S. Ct. 563, 2 L. Ed. 2d 579 (1958)).

17

¶40. Rule 8.04 of the Mississippi Uniform Circuit and County Court Rules provides, in relevant part:

> Before the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea. A plea of guilty is not voluntary if induced by fear, violence, deception, or improper inducements. A showing that the plea of guilty was voluntarily and intelligently made must appear in the record.

URCCC 8.04(3).

¶41. The majority finds that the banishment provision is unenforceable and that the trial court erred in revoking Mackey's suspended sentence on the basis of this illegal sentence. The banishment provision is a misrepresentation as contemplated by both the Fifth Circuit Court of Appeals and the United States Supreme Court and an improper inducement as defined by the Mississippi Uniform Circuit and County Court Rules. Mackey asserts that he would not have pleaded guilty, if not for the offer of this illegal sentence. This Court has more than sufficient evidence and legal authority before it to find that Mackey's plea was not knowing, intelligent, and voluntary. Therefore, I would set aside Mackey's guilty plea. Hence, both the State and the defendant would be returned to the positions they were in before the plea agreement was entered.

¶42. For the reasons stated herein, I respectfully concur in part and dissent in part.

**KITCHENS, J., JOINS THIS OPINION. RANDOLPH, J., JOINS THIS OPINION IN PART.**