CARLTON, J.,
dissenting:
¶21. I respectfully dissent from the majority’s opinion because I find the record reflects that the trial judge sufficiently articulated his reasoning for imposing banishment from the Third Circuit Court District, setting forth the factors as required by Cobb v. State, 437 So.2d 1218, 1219-21 (Miss.1983). I also dissent from the majority’s finding that the record contains a sufficient factual basis for such banishment. See Means v. State, 43 So.3d 438, 447 (¶ 33) (Miss.2010) (Graves, P.J., specially concurring) (acknowledging that the supreme court only recently began requiring the trial courts to affirmatively articulate their reasoning for, as well as the benefits of, imposing banishment when applying the Cobb factors).
¶ 22. The record in this case shows that during the plea colloquy in 2004, the trial judge fully explained the condition of the sentence of banishment to Carroll. The trial judge explained that the sentence was imposed to assist him in his rehabilitation and in avoiding persons and places of disrepute or criminal activity. The trial court informed Carroll during the colloquy that he would be banished from the Third Circuit Court District, and identified the counties in that district for Carroll: Benton, Tippah, Marshall, Lafayette, Union, Calhoun, and Chickasaw Counties. The court also explained to Carroll that based upon the offenses to which he was pleading guilty, he faced a maximum punishment of life without parole, but that the district attorney’s office recommended the trial court sentence Carroll to serve twenty years in the custody of the Mississippi Department of Corrections (MDOC), with eleven of those years suspended, leaving nine years to serve. The district attorney *478 also recommended placing Carroll on post-release supervision for five years upon his release from incarceration.[2] The trial court further explained that in the event the guilty plea was accepted, the district attorney also agreed to retire to the file a couple of other cases against Carroll; to not indict him or prosecute him on an armed-robbery charge; and to retire charges against his wife in the case in which he pled guilty. The trial court then explained the consequences of the sentence in the event the court accepted Carroll’s guilty plea. The trial court also explained to Carroll the consequences of violating the banishment provision after his release from incarceration.
¶ 23. In addition to an excerpt of the guilty-plea colloquy, the record also contains the trial court’s written sentencing order. The sentencing order reflects Carroll’s sentence to serve twenty years in the custody of MDOC, with eleven of those years suspended and nine to serve. The sentencing order also clearly sets forth the condition of banishment from a defined geographical area, the Third Circuit Court District. I submit that the record reflects that the banishment imposed is not arbitrary, unreasonable, or ambiguous, and is enforceable as set forth in the sentencing order.
¶24. Additionally, the plea colloquy shows that after confirming with Carroll on the record that he qualified for habitual-offender status for sentencing, as well as explaining the district attorney’s agreement to retire charges and refrain from prosecuting him in an armed-robbery charge, the trial judge explained that he imposed the banishment condition to assist Carroll in his rehabilitation and to help him avoid persons and places of disrepute or criminal activity upon his release from the penitentiary. The reasoning and factual basis articulated by the trial judge in the record sufficiently addresses the Cobb and McCreary[3] factors, and sufficiently provided the due process required by Cobb, McCreary, and Mackey,[4] Until the supreme court’s 2010 opinion in Mackey v. State, 37 So.3d 1161, 1167 (¶ 23) (Miss.2010), the supreme court placed no affirmative duty on trial courts to articulate their reasoning on the record as to the Cobb factors. See also Means, 43 So.3d at 447 (¶ 33). The court in Mackey cited Mississippi Code Annotated section 47-7-35 in providing that banishment was not prohibited and stating that a trial court may impose banishment to a defined geographic region of the state as a condition of the sentence as long as the trial judge addressed the Cobb and McCreary factors in doing so. Mackey, 37 So.3d at 1167 (¶ 23). The opinion in Mackey explained that a trial judge may not simply cite Cobb and state that the court considered the Cobb factors when sentencing a defendant, but that the reasoning articulated by the trial court must indeed address the required factors. Id. at 1165 (¶ 14).
¶25. In the case before us, the trial judge, in my view, sufficiently addressed the Cobb and McCreary factors, and I *479 recognize that the trial court sentenced Carroll before the Mackey court required the trial court’s reasoning to be affirmatively stated on the record. The trial court sentenced Carroll in 2004, but as acknowledged in Means, the supreme court only recently began requiring the trial court’s reasoning for imposing banishment as a condition of a sentence to be affirmatively articulated, as well as the banishment to be factually supported by the record. Here, the trial court’s banishment condition was limited to banishment from the Third Circuit Court District, and the trial judge identified by name the counties in that district for Carroll.
¶ 26. Upon review of the banishment condition imposed, I rely upon the supreme court precedent of Means v. State,[5] which I quote in length:
We held in McCreary that banishments from the entire state violate public policy. Specifically, we explained that “banishment from a large geographical area, especially outside of the State, struggles to serve any rehabilitative purpose, and implicates serious public policy questions against the dumping of convicts on another jurisdiction.” McCreary, 582 So.2d at 427-28 (citing [United States ] v. Abushaar, 761 F.2d 954, 959-60 (3d Cir.1985); Rutherford v. Blankenship, 468 F.Supp. 1357, 1360-61 (W.D.Va.1979)). See also, Simoneaux v. State, 29 So.3d 26, 39 (Miss.Ct.App.2009) (“While banishing Simoneaux from Mississippi would perhaps provide a degree of protection to the citizens of our state, we certainly do not want our sister states repaying us for the favor.”).
Cobb represents this Court’s seminal decision on banishment. The criminal charge in Cobb stemmed from an incident in which Cobb’s nephew had thrown rocks at Cobb’s vehicle as he passed by. Cobb, 437 So.2d at 1220. Instead of notifying his brother (the boy’s father) of the incident so that he could properly discipline the child, Cobb, who had a notoriously bad temper, shot the boy. Id. Thankfully, the boy recovered. Cobb pleaded guilty to aggravated assault and was sentenced to twelve years’ imprisonment. Yet the circuit judge suspended the sentence and put Cobb on probation for five years, provided he leave Stone County and stay 125 miles away from the county. Id. at 1219. On direct appeal, Cobb raised several arguments regarding the impropriety of the banishment.
In addressing Cobb’s contentions, this Court first held that the banishment provision bore a reasonable relationship to the purpose of probation. We specifically pointed out that “Mississippi Code Annotated [section] 47-7-35 (Supp.1982) provides that courts shall determine the terms and conditions of probation and may order the probationer to ‘... [r]e-main within a specified area[.]’ ” Cobb, 437 So.2d at 1219 (quoting Miss.Code Ann. § 47-7-35(g) (Supp.1982)). And we explained that, “instead of being a matter of right, it is by grace that probation is granted a defendant, and within his sound judicial discretion the trial judge may fix reasonable conditions of probation.” Id. at 1221 (citing Owens v. Kelley, 681 F.2d 1362 (11th Cir.1982)). We also found that the banishment did not violate public policy nor defeat the rehabilitative purpose of probation. Cobb, 437 So.2d at 1220-21. We noted that the judge “recognized that Cobb had an uncontrollable temper, and relat *480 ed this to the community,” explaining that until Cobb learned to control his temper, it was not likely that he could live in harmony with his brother’s family. Id. at 1220. The judge cautioned that, had the boy died, Cobb likely would have received a life sentence. Id. But the judge did not want to punish “a man of Cobb’s character” so severely. Since Cobb’s house was only three-eighths of a mile from his brother’s house, the circuit judge thought the best interests of everyone required getting Cobb “away from his brother and family.” Id. at 1220-21. The circuit judge noted that “compared to what I could have done, I think I have been relatively kind.” Id. at 1221. We also recognized that “some amount of punitive aspects of probation serve the public interest as well as the probationer’s interest.” Id. at 1221. So we agreed with the circuit judge that “the ends of justice and the best interests of the public as well as the defendant would be served by the banishment.” Id. at 1220.
Finally, we found that the trial court had not violated Cobb’s constitutional rights by imposing the banishment condition. We noted that:
Here the record shows that the trial judge carefully and meticulously explained to Cobb his rights which shows that Cobb understood that he could be sentenced to 20 years in the penitentiary upon the indictment to which he pled guilty. As found by the trial judge, Cobb voluntarily and knowingly pled guilty and specifically acknowledged his guilt. Then the court deferred sentence, so that the Mississippi Department of Corrections could “conduct an investigation of this defendant” and present a pre-sentence report to the trial court, all of which presumably was done. The judgment of the court fixing the sentence and conditions here complained of shows that Cobb (while represented by counsel) signed the judgment underneath the following language: “I accept the above probation in accordance with the terms thereof.”
Cobb, 437 So.2d at 1221. We thus found that Cobb’s rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution had not been violated by imposition of the conditions of his probation, including the banishment. Id.
Based on the trial court’s on-the-record adjudication of all those factors, this Court held on appeal, in pertinent part, that:
Upon the record as made and presented, we find that the conditions imposed by the sentencing judge were reasonably related to Cobb’s circumstances and his intended rehabilitation. Upon these facts, we are unable to say that removing him from the area was unreasonable or arbitrary or in any sense violated public policy or his authority under the pertinent statutes.
Cobb, 437 So.2d at 1220, 1221 (emphasis added). Further, in McCreary, we explained why Cobb’s banishment had been affirmed. We stated that:
In Cobb, the Court satisfied itself from the record that the banishment provision bore a reasonable relationship to the purpose of probation; that the ends of justice and the best interest of the defendant and the public would be served; that public policy was not violated and the rehabilitative purpose of probation was not defeated; and that Cobb’s rights under the First, Fifth and Fourteenth Amendments to the United States Constitution were not violated.
*481 McCreary, 582 So.2d at 427 (citing Cobb, 487 So.2d at 1219-21) (emphasis added). So this Court affirmed Cobb’s banishment because we were satisfied from the record as made and presented — which included specific facts regarding Cobb’s situation, character, and offense — that Cobb’s banishment would achieve a rehabilitative purpose, serve the ends of justice, and protect the rights and interests of Cobb and the public. Cobb, 437 So.2d at 1219-21; McCreary, 582 So.2d at 427.
Our decisions in Cobb and McCreary do not necessarily place an affirmative duty on the trial judge to articulate the Cobb factors on the record. Cobb and McCreary simply indicate that we will affirm a banishment only if we are satisfied from the record as made and presented that the banishment is appropriate, taking the Cobb factors into consideration. Cobb, 437 So.2d at 1219-21; McCreary, 582 So.2d at 427. But we cannot be satisfied from the record that the banishment is proper if no record is made or presented that the banishment would achieve the goals outlined by Cobb and McCreary. So a trial judge who imposes banishment as a condition of probation or a suspended sentence, and wishes to have the banishment affirmed on appeal, will be best served by articulating, on the record, the reasons for and benefits of the banishment under the Cobb factors as they relate to the defendant.
To that end, this Court recently held that “a trial judge’s reasons for ordering banishment must be articulated and supported in the record by a factual basis, as required by Cobb and McCreary.” Mackey v. State, 37 So.3d 1161, 1167 (Miss.2010). Mackey thus imposes an affirmative duty on the trial court to articulate, on the record, the Cobb factors as they relate to the defendant to support the banishment. The Court of Appeals has recognized this affirmative duty for some time now. Put simply, “in order for banishment to be an appropriate form of punishment, an on the record analysis of the Cobb factors is required.” Hamm v. State, 758 So.2d 1042, 1047 (Miss.Ct.App.2000) (deriding this “outmoded form of punishment”).
Today, we reaffirm the duty we announced in Mackey, and we provide more significant reasons for our imposition of it. It is evident from a reading of the Cobb decision that banishment is a unique and extraordinary form of punishment and should be seldom and cautiously imposed. Both Cobb and McCreary make clear that unreasonable, arbitrary, or unjustified banishment orders will not be upheld. See Mackey, 37 So.3d at 1166-67 (“compelling reasons must be offered to justify allowing a defendant convicted of a serious criminal offense to leave the jurisdiction unsupervised, as opposed to incarceration or keeping the defendant in the jurisdiction of the court, with supervision”). See also K.N.L. v. State, 803 So.2d 1245, 1249 (Miss.Ct.App.2002) (affirming banishment from shopping mall of teenager convicted of shoplifting from store in mall).
Means v. State, 43 So.3d 438, 442-45 (¶¶ 14-22) (Miss.2010) (emphasis added).
¶ 27. I would accordingly affirm the trial court’s judgment.

. See Watts v. Brewer, No. 2:09cv122-KS-MTP, 2012 WL 1301261, *6-8 (S.D.Miss. Mar. 16, 2012) (Mississippi courts recognize that a suspended sentence with conditions implies a period of probation for a maximum period allowed by law); see also Hamm v. State, 758 So.2d 1042, 1046-47 (¶¶ 12-15) (Miss.Ct.App.2000) (sentence of ten years with nine suspended; suspended sentence was revoked within five years even though sentence listed no specific probationary period); see also Shumpert v. State, 764 So.2d 1250, 1252-53 (¶ 9) (Miss.Ct.App.2000).

. McCreary v. State, 582 So.2d 425, 427 (Miss.1991).

. Mackey v. State, 37 So.3d 1161, 1167 (¶ 23) (Miss.2010).

. Carroll pled guilty in 2004. In Means v. State, a 2010 case, the supreme court acknowledged that the requirement to affirmatively articulate the Cobb and McCreary factors was recent. Means, 43 So.3d at 444 (¶ 21).