**UNITED STATES of America**

v.

**Mohamad ABUSHAAR, Appellant.**

**No. 84–1437.**

United States Court of Appeals,
Third Circuit.

Argued Feb. 5, 1985.

Decided May 17, 1985.

Rehearing Denied June 6, 1985.

Thomas B. Kenworthy (argued), William M. Blier, Morgan, Lewis & Bockius, Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Paul L. Gray (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before SEITZ, GIBBONS and SLOVITER, Circuit Judges.

**OPINION OF THE COURT**

SLOVITER, Circuit Judge.

I.

FACTS

Mohamad Abushaar, a Syrian citizen who was in the United States on a student visa, took part in a scheme to induce American citizens to marry Syrian aliens in exchange for money so that the Syrians could obtain permanent residence status in the United States. Abushaar married Paula Kiessling, who was paid money and told that she would not have to consummate the marriage nor reside with Abushaar. Abushaar filed an INS application for status as a

permanent resident falsely stating that he was residing with his wife.

Abushaar, who was 21 years old at the time, was indicted both for conspiracy to make false statements to an agency of the United States in violation of 18 U.S.C. § 371 and for the substantive offense of making the false statements, *i.e.,* the fraudulent application for status as a permanent resident in violation of 18 U.S.C. § 1001. He pled guilty to making the false statement, the penalty for which is a fine of not more than $10,000 and/or imprisonment of up to five years. Under the terms of the plea bargain, the government agreed not to oppose sentencing pursuant to the Federal Youth Corrections Act (YCA), Act of Sept. 30, 1950, ch. 1115, § 2, 64 Stat. 1085–90 (formerly codified as amended at 18 U.S.C. §§ 5005–5026 (1982)), *repealed by* Act of Oct. 12, 1984, Pub.L. No. 98–473, Title II, ch. II, § 218(a)(8), 98 Stat. 2027, to recommend that any custodial sentence be imposed pursuant to 18 U.S.C. § 3651, para. 2, and to move to dismiss the conspiracy count.

The government's sentencing memorandum submitted to the district court stated:

It is the position of the government that this court should impose a sentence pursuant to the Youth Corrections Act. This defendant, though convicted of criminal offenses, does not present the type of individual who poses a threat to society. To the contrary, the evidence shows him to be hardworking. That he have an opportunity to prove himself worthy of the benefits of the Act is not, therefore, unreasonable. In view of the nature of this offense, however, the government respectfully requests the Court to consider imposing as a condition of any probationary sentence the specific condition that the defendant leave the United States at his own expense and not return within the probationary period. This would serve the purpose of generally deterring others from committing similar offenses.

At the sentencing hearing, the district court stated:

The court finds that the *defendant, although eligible* by reason of his age *for commitment under the Federal Youth Offenders Act, will not derive any benefit from treatment under subsection b or c of that Act and will therefore, be sentenced without regard to that Act.*

It is the sentence of this court as to Count II of the indictment that the sentence is suspended; that the *defendant is placed on probation for a period of three years* upon the following conditions and terms:

The defendant is to comply with all local, state and federal laws; the defendant is to comply with the rules and regulations of the probation department. That the defendant cooperate under the direction of the Department of Immigration and Naturalization; *and that the defendant serve his probation period outside of the United States;* that he leave the United States at his own expense.

If you come back—I am giving you three years probation—if you come back during that period of time I am going to send you to prison. If you want to come back to the United States, you come back to the United States in the same manner that so many other people come to the United States.

(emphasis added).

Abushaar appeals from two features of the sentence. First, he challenges his sentence to adult probation, as distinguished from probation under the YCA, 18 U.S.C. § 5010(a). Second, he challenges the condition of his probation requiring him to spend his period of probation outside of the United States.

## II.

### ADULT PROBATION AND THE YCA

Preliminarily, we note that although the YCA has been repealed by the Crime Control Act of 1984, the YCA was applicable at the time of Abushaar's sentencing. Abushaar was convicted and sentenced on July

13, 1984, before the repeal of the YCA on October 12, 1984. Thus, we need not consider the questions raised in other courts as to the *ex post facto* implications of repeal of the YCA for offenses committed while that statute was still in force. *See, e.g., United States v. Romero,* 596 F.Supp. 446, 448–49 (D.N.M.1984).

We thus examine Abushaar's contention that a sentence of probation imposed upon a defendant eligible for sentencing under the YCA must be imposed as a matter of law pursuant to 18 U.S.C. § 5010(a) in light of the statute itself. The YCA specifies four options for the district court when dealing with a youth offender. They are:

(a) If the court believes the youth offender does not need commitment, it may place the youth offender on probation. 18 U.S.C. § 5010(a);

(b) It may sentence the youth offender to the custody of the Attorney General for treatment and supervision for a term not to exceed six years, 18 U.S.C. § 5010(b);

(c) It may sentence the youth to the custody of the Attorney General for treatment and supervision for a term in excess of six years, but not to exceed the maximum period of imprisonment authorized under law for the offense of which the youth stands convicted, 18 U.S.C. § 5010(c); or

(d) "If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court may sentence the youth offender under any other applicable penalty provision." 18 U.S.C. § 5010(d).

In this case, the district court expressly made the finding required by subsection (d) and sentenced Abushaar to probation as an adult. By sentencing Abushaar to probation as an adult under 18 U.S.C. § 5010(d) instead of to probation as a youth offender under 18 U.S.C. § 5010(a), Abushaar was deprived of the benefit of the YCA provision that the court may thereafter, in its

discretion, unconditionally discharge him prior to the expiration of the probation period, which would result in the automatic set aside of his conviction. 18 U.S.C. § 5021(b).[1]

Abushaar argues that subsections (a) through (d) of 18 U.S.C. § 5010 are arranged in order of increasing severity. Probation, he reasons, is the least severe penalty and therefore Congress must have intended that only the most incorrigible youth would be sentenced under subsection (d). His analysis concludes that since incorrigible youths are not sentenced to probation, such a sentence for corrigible youths must be limited to YCA probation.

We reject Abushaar's statutory interpretation for several reasons. We find nothing in either the legislative history or in the language of the statute to support Abushaar's contention that subsection (d) is intended to be the most severe sentence. It can just as plausibly be construed to have been placed last because it is the alternative to sentencing as a youth offender under the preceding three sections.

We find much more persuasive the undisputed legislative history that the purpose of the YCA was to give the judge "the discretionary use [of] a system for the sentencing and treatment" of youth offenders, H.R.Rep. No. 2979, 81st Cong., 2d Sess., *reprinted in* 1950 U.S.Code Cong.Serv. 3983, 3983, and that it was not intended to deprive the judge of the discretion to sentence the youthful offender to the punishment prescribed by existing statutes, if the judge so chooses. *Hearings on S. 1114 and S. 2609 before a Subcomm. of the Senate Comm. on the Judiciary,* 81st Cong., 1st Sess., 43–44 (1949) (statement by Chief Judge John J. Parker, Chairman of the Judicial Conference Special Committee), *quoted in Dorszynski v. United States,* 418 .U.S. 424, 437–38, 94 S.Ct. 3042, 3049–50, 41 L.Ed.2d 855 (1974). As the Supreme

---

**1.** The text of that provision states:

(b) Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation

prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect.

Court stated in *Dorszynski*, "There is virtual unanimity of opinion in the legislative history that the Act was intended to increase the sentencing options of federal trial judges, rather than to limit the exercise of their discretion whether to employ the newly created options." 418 U.S. at 440, 94 S.Ct. at 3051.

Abushaar's statutory reading would deprive the sentencing judge of the discretion to sentence a youth offender to adult probation. This restrictive reading not only conflicts with the legislative intent to expand the discretion of the sentencing judge, but it also conflicts with the provision of the statute which states:

> Nothing in this chapter shall limit or affect the power of any court to suspend the imposition or execution of any sentence and place a youth offender on probation or be construed in any wise to amend, repeal, or affect the provisions of chapter 231 of this title ... relative to probation.

18 U.S.C. § 5023(a). Chapter 231 referred to contains the provisions governing adult probation. *See* 18 U.S.C. §§ 3651–56.

■ The only two appellate cases that have considered a contention similar to Abushaar's have rejected it, holding instead that the district court retains the discretion to sentence a youth offender to probation as an adult. *See United States v. Kurzyna*, 485 F.2d 517, 518–19 (2d Cir. 1973), *cert. denied*, 415 U.S. 949, 94 S.Ct. 1472, 39 L.Ed.2d 565 (1974); *United States v. Jarratt*, 471 F.2d 226, 229–30 (9th Cir.), *cert. denied*, 411 U.S. 969, 93 S.Ct. 2161, 36 L.Ed.2d 691 (1973). Nothing in the Court's opinion in *Durst v. United States*, 434 U.S. 542, 98 S.Ct. 849, 55 L.Ed.2d 14 (1978), calls into question the results reached by these courts, since even if the only difference between youth and adult probation is the subsequent discretion in the district court, that case did not suggest that imposition of adult probation is precluded. In short, we hold that a district court retains the discretion to sentence a youth offender to adult probation under 18 U.S.C. § 5010(d) even though it thereby foregoes its option to

exercise later discretion to discharge the offender from probation.

■ We also reject Abushaar's argument that the YCA requires the district court to find that the youth offender will not benefit from treatment under 18 U.S.C. § 5010(a). It is enough that the district court complied with the requirement of the statute that it must "find that the youth offender will not derive benefit from treatment under subsection (b) or (c)." 18 U.S.C. § 5010(d). Such a finding satisfies the statutory objective to have the sentencing court consider the option of treatment under the YCA. *Dorszynski*, 418 U.S. at 443, 94 S.Ct. at 3052. Once the district court has satisfied this requirement, an appeals court may not impose any additional requirement. *Id.* at 441–43, 94 S.Ct. at 3051–52.

We cannot refrain from a brief requiem for a program that began with the lofty idealistic aspiration of helping errant young offenders return to society as productive members, a program that has now been abandoned with nary a squeak. The Federal Youth Corrections Act, enacted in 1950, was the outgrowth of recommendations made by the Judicial Conference of the United States seven years before. *See Dorszynski v. United States*, 418 U.S. at 432 & n. 8, 94 S.Ct. at 3047 & n. 8. It was modeled on the system of treatment of young offenders in England, known as the Borstal system, *id.*, and was "designed to provide a better method for treating young offenders convicted in federal courts in that vulnerable age bracket [between 16 and 22], to rehabilitate them and restore normal behavior patterns." *Id.* at 433, 94 S.Ct. at 3047.

The House Committee on the Judiciary reported that, "Over the last 30 years, the Youth Corrections Act has failed to fulfill its goals." H.Rep. No. 1017, 98th Cong., 2d Sess. 57 (1984). Congress has now repealed the Act on the basis of recent studies suggesting "that the rehabilitation model is not an appropriate basis for sentencing decisions." S.Rep. No. 225, 98th Cong., 2d Sess. 40, *reprinted in* 1984 U.S.Code

Cong. & Ad.News 3182, 3223. We leave it to the penologists and social historians to evaluate the program, its successes, if any, and the causes for its defeat. We merely note with sadness this fall from innocence.

## III.

### CONDITION ON PROBATION

■ Under 18 U.S.C. § 3651, a district court,

> when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation *for such period and upon such terms and conditions as the court deems best.*

(emphasis added). Conditions placed on probation are valid so long as they are reasonably related to the ends of probation. *See United States v. John Scher Presents, Inc.,* 746 F.2d 959, 962–63 (3d Cir.1984); *United States v. Restor,* 679 F.2d 338, 340 (3d Cir.1982) (per curiam); *United States v. Stine,* 675 F.2d 69, 71 (3d Cir.), *cert. denied,* 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982); *Higdon v. United States,* 627 F.2d 893, 898 (9th Cir.1980); *United States v. Tonry,* 605 F.2d 144, 147 (5th Cir.1979).

Abushaar argues that the condition that he remain outside the United States during the term of his probation is not related to the purposes for which probation may be imposed, namely rehabilitation of the offender or the safety of the public. In *United States v. Consuelo-Gonzalez,* 521 F.2d 259, 263–64 (9th Cir.1975) (in banc), the court considered in depth the purposes of probation, referring to the numerous Supreme Court cases which have recognized that the rehabilitation aim was a central purpose of the Federal Probation Act. Whatever disenchantment with this goal is reflected in the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, tit. II, 98 Stat. 1976, the purpose of rehabilitation was the guiding principle of the Probation Act under which Abushaar was sentenced.

*See, e.g., Higdon v. United States,* 627 F.2d at 897.

We can discern no valid rehabilitative purpose in placing Abushaar outside the United States where his activities cannot be supervised by the probation authorities. Although federal probation is not required by statute to be supervised, as a matter of practice, supervision generally is an integral part of probation. The advantages of supervised probation would be particularly pertinent in Abushaar's case in light of his youth, and in light of the government's evaluation of him as a hard working individual "who poses no threat to society." In view of the government's own assessment, there appears to be no reason to expect that Abushaar, following a period of supervised probation, would return to criminal behavior.

In the government's sentencing memorandum, the only reason given for suggesting banishment or exile of Abushaar was that it "would serve the purpose of generally deterring others from committing similar offenses." It did not suggest to the district court that the purpose of banishing or exiling Abushaar was to punish him. Therefore we must evaluate the validity of this condition of probation in the light in which it has been presented, *i.e.,* as one serving neither the purpose of rehabilitation nor of protecting the public, but as one that is designed only to deter other persons from committing similar offenses.

The government suggests that this court has accepted the view that general deterrence is alone a sufficient basis for a probation condition. It points to language in two recent cases of this court, quoting a passage of a Fifth Circuit case that:

> A condition of probation satisfies the statute so long as it is reasonably related to rehabilitation of the probationer, protection of the public against other offenses during its term, deterrence of future misconduct by the probationer or *general deterrence of others,* condign punishment, or some combination of these objectives.

*United States v. Tonry*, 605 F.2d at 148 (emphasis added), *quoted in United States v. John Scher Presents*, 746 F.2d at 962 *and United States v. Restor*, 679 F.2d at 340.

Both of our cases concerned the propriety of community service as a condition of probation. In *Restor*, we affirmed a probation condition imposing community service, stating that the purpose of such service was "to reinstate [the defendants] in society, ... [to] 'integrate [them] in a working environment, and inculcate in [them] a sense of social responsibility.'" 679 F.2d at 340. These are patently permissible aims of probation, since they are directly related to rehabilitation of the offender. In *John Scher Presents*, we struck down a condition requiring defendants to contribute their services to charities approved by the Probation Department until they raised $100,000 because we found it exceeded the discretion of the district court under 18 U.S.C. § 3651 to order monetary payments. 746 F.2d at 964. In neither case did we hold that a condition on probation is proper if it serves only the end of "general deterrence", and nothing in either holding derogates from our earlier statement of the law that conditions on probation must be "reasonably related to rehabilitation and public safety, the ends of probation." *United States v. Stine*, 675 F.2d 69, 71 (3d Cir. 1982) (citing *Consuelo-Gonzalez*, 521 F.2d at 265). *See also United States v. Arthur*, 602 F.2d 660, 664 (4th Cir.), *cert. denied*, 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979); *Porth v. Templar*, 453 F.2d 330, 333 (10th Cir.1971). Significantly, in the Fifth Circuit case on which the government relies, the court specifically found that the condition challenged there could be sustained "because it is tailored to the needs of [the probationer's] rehabilitation." *United States v. Tonry*, 605 F.2d at 151.

We do not suggest that the deterrent effect of a condition of probation may not be taken into account by the district court. Moreover, we distinguish specific deterrence, which could be related to protection of the public, from general deterrence, which is relied on by the government here. As the Ninth Circuit has stated,

[C]onditions which serve to protect the public from recidivism by the probationer or to deter others by way of example are not contrary to the purposes of the Act so long as all the conditions construed together serve substantially the purpose of rehabilitation.

*United States v. Consuelo-Gonzalez*, 521 F.2d at 267.

■ We believe that is a correct statement of the law. Thus we hold that since the condition that Abushaar serve his probation outside the United States was completely unrelated to his rehabilitation or the protection of the public, imposition of such a condition was an abuse of discretion.

We also accept Abushaar's argument that the "banishment" condition of his probation amounts, de facto, to deportation and circumvents the law and regulations relating to deportability of aliens. Historically,

[b]anishment has its roots in antiquity. It is listed as a punishment in the oldest recorded system of law, *The Code of Hammurabi*, which was written around 1700 B.C. In ancient Greece, it served both as a punishment and as a means of ostracization by popular vote without trial or accusation. Banishment was employed by the Romans both as a prohibition against entering the city and as an exile to a specific territory.

Note, *Banishment—A Medieval Tactic in Modern Criminal Law*, 5 Utah L.Rev. 365 (1957). The legendary and historical recognition of the harshness of banishment or exile is reflected in the fate of Adam and Eve, or Socrates' choice to drink the hemlock rather than leave Athens. Some scholars speculate that, in primitive societies, banishment was tantamount to death. *See, e.g.*, H. Barnes & N. Teeters, *New Horizons in Criminology* 294 (3d ed. 1959). With time, more developed societies have tended to eliminate banishment and analogous punishments, such as "transportation", *i.e.*, the sending of criminals to distant colonies.

The treatment of banishment as a condition of probation in this country has been summarized by scholars in the field as follows:

> When the condition orders the probationer ... to leave a broad geographical region, ... the condition ... is usually invalidated. Courts give several reasons for striking down these banishment conditions. A common rationale is that banishment serves neither a rehabilitative nor a public protection function....
>
> A second rationale is that the banishment condition is against public policy because it permits one jurisdiction to "dump" its criminals on another jurisdiction.

N. Cohen & J. Gobert, *The Law of Probation and Parole* 262–63 (1983) (footnotes omitted). *See also* Note, *Limitations Upon Trial Court Discretion in Imposing Conditions of Probation*, 8 Ga.L.Rev. 466 (1974).[2]

Citizens are generally considered to have a right to remain in their country and aliens may be deported only in accordance with the carefully designed federal statutory and regulatory scheme. In the most closely analogous case, *United States v. Castillo-Burgos*, 501 F.2d 217 (9th Cir.), *cert. denied*, 419 U.S. 1010, 95 S.Ct. 330, 42 L.Ed.2d 284 (1974), the district court had sentenced a defendant convicted of attempting to import marijuana from Mexico to the custody of the Attorney General to be confined for six months and then permanently deported, with five years' probation. The Ninth Circuit held that deportation was beyond the sentencing judge's authority and vacated the order, stating:

> Congress has enacted laws governing the admission, expulsion, and deportation of aliens, 8 U.S.C. §§ 1181–1255. Those laws delegate authority to order deportation to the Attorney General and not to the judiciary. 8 U.S.C. §§ 1251–1255. Nowhere in this detailed statutory scheme is there a provision for a court to deport aliens sua sponte.

501 F.2d at 219–20. Similarly, in *United States v. Hernandez*, 588 F.2d 346, 350–52 (2d Cir.1978), the Second Circuit struck down a condition placed on an offender's parole that he not return to the United States for 25 years. The court stated:

> The no-return condition would short-circuit Congress's scheme and assume an unwarranted exercise of the Attorney General's authority just as effectively as if the sentence had contained a direct order of deportation and exclusion.

*Id.* at 351. The *Hernandez* court followed *Castillo-Burgos* and held that the condition imposed exceeded the authority of the sentencing judge.

■ We rely on the same rationale to strike the banishment condition imposed on Abushaar. A condition of probation may not circumvent another statutory scheme. *See Higdon v. United States*, 627 F.2d at 898; *see also United States v. Pastore*, 537 F.2d 675, 682–83 (2d Cir.1976) (invalidating probation condition that attorney resign from bar given well-defined procedures for expulsion from the bar). Whether and how

---

**2.** The author states:

> Banishment has consistently been held void as a condition of probation. In one of the first cases to do so, *People v. Baum*, the defendant was convicted of violating a liquor law, and, as a condition of his probation, required to "leave the state of Michigan within 30 days and not return for [the] period of probation." Although recognizing that banishment was a common method of punishment in England, the court held the condition void because of its antipathy to the federal system, i.e., permitting one state to force its criminals into another "would tend to incite dissension, provoke retaliation, and disturb that fundamental equality of political rights among the several states which is the basis of the Union itself." Since the *Baum* decision many other courts have invalidated a condition of banishment, some expressing concern for considerations other than the problems of interstate relations stressed by the *Baum* court. In *State v. Doughtie*, for example, the court emphasized the historically burdensome "lot of the exile." These arguments used to justify the proscription of banishment are undoubtedly valid. Furthermore, when one considers that probationary supervision would be all but impossible if the defendant were required to leave the jurisdiction, proscription of banishment is seen to be clearly consonant with the purposes of probation. *Id.* at 469–70 (footnotes omitted).

to initiate deportation procedures is exclusively the province of the Attorney General, through the Immigration and Naturalization Service.[3]

## IV.

### CONCLUSION

We have held that the district court had the discretion to sentence Abushaar to probation as an adult after having made the findings required by the Youth Corrections Act. However, we have held that the condition imposed on that probation that Abushaar serve the probation time outside the country was impermissible both because it was completely unrelated to any purpose to rehabilitate Abushaar or protect the public and because it undermined the authority vested by Congress in the Attorney General to control deportation of aliens. Therefore, we will vacate the judgment and order of the district court of July 11, 1984 and will remand this case to the district court for resentencing by imposition of any such other conditions of probation as the district court may deem appropriate.

---

**3.** At oral argument, we were advised that Abushaar has left the United States, presumably in compliance with the probation condition. We do not address here the effect of our decision that the probation condition was impermissible on Abushaar's right to reenter this country.