MAXWELL, J.,
for the Court.
¶ 1. Richard A. Simoneaux pled guilty to the sexual abuse of a seventy-six-year-old vulnerable adult who lived in a nursing home. He also entered guilty pleas to one count of sexual battery, two burglary-related counts, and two counts of voyeurism, which stemmed from him peeping into nursing homes and spying upon the residents.
¶ 2. Rather than proceed to trial, Simo-neaux chose to enter guilty pleas to each count in what appears to be a package deal, complete with sentencing recommendations from the State. When questioned by the trial judge, Simoneaux offered unwavering admissions of guilt, and the trial judge accepted his guilty pleas.
¶ 3. Simoneaux also admitted to the court that he has had problems for a long time and pleaded for the court to help him with these problems. The trial judge sentenced Simoneaux in line with the State and Simoneaux’s agreed upon recommendation to a sentence of twenty-five years’ imprisonment, on the six counts of conviction with each count to run concurrently with the others.[1] Also, pursuant to the State’s recommendation, the trial court ordered that Simoneaux be banned from Mississippi upon his release from the Mississippi Department of Corrections. Thereafter, assisted by different counsel, Simoneaux sought post-conviction relief, which the trial court denied.
¶4. Aggrieved, Simoneaux appeals, asserting essentially five issues: (1) his guilty pleas were involuntary because of *30 insufficient factual bases and because the elements of each offense were not explained to him; (2) his counsel was constitutionally ineffective; (3) his convictions for both sexual abuse of a vulnerable adult and sexual battery violate double jeopardy; (4) the trial court’s order banishing him from Mississippi is unconstitutional and illegal as applied; and (5) he is being denied his right to receive credit against his sentence for time spent incarcerated.
¶ 5. We affirm the trial court’s denial of Simoneaux’s petition for post-conviction relief on issues one, two, and three, and modify the trial court’s denial of the post-conviction motion as to the banishment provision complained of in his fourth assignment of error; accordingly, we order the banishment provision stricken from his sentence. We also agree that he should be given credit for time served, as requested, but instruct Simoneaux to voice his requests to the proper authorities within the MDOC administrative system. We will address each assignment of error in turn.
STANDARD OF REVIEW
¶ 6. “[T]his Court reviews a denial of post-conviction relief under an abuse of discretion standard.” Brown v. State, 872 So.2d 96, 98(¶ 8) (Miss.Ct.App.2004). We will not overturn a lower court’s denial of post-conviction relief unless its factual findings are clearly erroneous. McClinton v. State, 799 So.2d 123, 126(¶ 4) (Miss.Ct.App.2001). However, if questions of law are raised on appeal, our standard of review is de novo. Id.
I. Whether Simoneaux’s Guilty Pleas Were Voluntary

A. Factual Basis

¶ 7. It is undisputed that neither Simoneaux nor the State laid out all of the specific, detailed facts of the underlying charges when he pled guilty. However, the failure to do so does not in and of itself render a guilty plea involuntary, nor does it cause a factual showing to fail merely because the details that may be brought forth at trial are not fleshed out. Corley v. State, 585 So.2d 765, 767-68 (Miss.1991). Furthermore, our appellate courts are not limited to a mere review of the plea transcript. Instead, we are directed to review the entire record to determine if a factual basis exists. Boddie v. State, 875 So.2d 180, 183(¶ 8) (Miss.2004).

1. The First Indictment

¶ 8. Count One of the indictment in Cause No. 04-212 charged Simoneaux with sexual battery. Mississippi Code Annotated section 97-3-95 (Rev.2006) makes clear that a person is guilty of sexual battery if: (1) he engages in sexual penetration with another person, (2) without her consent. We find that both elements are present in Count One. The count is also heavily fact laden. It charges, in pertinent part, that Simoneaux “did wil[I]fully, unlawfully and feloniously engage in sexual penetration against the will and without the consent of [F.S.[2]], a female person.... ” The indictment also describes the manner in which Simoneaux committed the sexual battery, that is, by “willfully, unlawfully and felo-niously inserting his penis into the vagina” of F.S.
¶ 9. Count Two charges sexual abuse of a vulnerable adult. Mississippi Code Annotated section 43-47-19(3) (Rev.2004) instructs that “[a]ny person who willfully inflicts physical pain or injury upon a vulnerable adult, shall be guilty of felonious *31 abuse or battery....” This count is also sufficiently specific and all elements are addressed. The charging language provides that Simoneaux, “did wil[l]fully, unlawfully and feloniously inflict physical pain upon [F.S.], a female born, January 26, 1928, a vulnerable adult.” The manner in which Simoneaux caused physical pain to F.S., was also clearly stated. According to the indictment, he “pull[ed] her legs apart and insert[ed] his penis into [her] vagina.... ”
¶ 10. The burglary alleged in Count Three charged Simoneaux with breaking and entering into a dwelling occupied by F.S., a resident of McComb Extended Care. The method of breaking was described in detail and so was the underlying felony. Simoneaux was accused of “wil[l]fully, unlawfully, feloniously, forcibly and burglariously forcing an outer window” of McComb Extended Care, with the intent to sexually abuse and sexually penetrate F.S. There are two elements in a burglary case: (1) the burglarious breaking and entering a dwelling, and (2) the felonious attempt to commit some crime therein. Tran v. State, 962 So.2d 1237, 1242(¶ 19) (Miss.2007). Both elements are clearly pled, and the count is sufficiently specific.
¶ 11. Simoneaux received a copy of this indictment. He was also verbally advised of the specific chai’ges and facts giving rise to the offenses. The indictment was read to him verbatim during his arraignment and is certainly part of the record in this matter. All three counts were without question sufficiently specific enough for the trial court to determine that Simo-neaux’s conduct was indeed criminal. The first two counts set forth graphic details of the sexual abuse of a vulnerable adult and the sexual battery charge. The remaining burglary count is also sufficiently comprehensive.

2. The Second Indictment

¶ 12. A second indictment was returned in Cause No. 04-211. Simoneaux was charged in Count One with attempted burglary of a dwelling. More specifically, Count One accused Simoneaux of attempting to break into the Camellia Estates building in McComb, which was occupied and used by D.E. Count One also set forth Simoneaux’s attempt to enter through a door to Room E-1A, which was occupied by D.E., with the intent to assault D.E., but his attempt failed. Again, the allegations are fact specific, and all elements are present.
¶ 13. As to Count Two, Simoneaux was charged with voyeurism, in violation of Mississippi Code Annotated section 97-29-61 (Rev.2006). This section makes clear that “[a]ny person who enters upon real property whether the original entry is legal or not, and thereafter pries or peeps through a window ... for the lewd, licentious and indecent purpose of spying upon the occupants thereof, shall be guilty of’ voyeurism. Count two alleges that Simo-neaux “wil[l]fully, unlawfully and felo-niously” entered upon the property of Camellia Estates and once there, peeped through a window of D.E.’s residence for the lewd, licentious, and indecent purpose of spying on her. Again, the facts are specifically pled and each element of the statute is addressed.
¶ 14. Count Three charged Simoneaux with a separate act of voyeurism. This time Simoneaux was charged with entering a different property, McComb Nursing and Rehab, and thereafter peeping through a window of the room of A.A. and M.B. for the lewd, licentious, and indecent purpose of spying on them. Once more, the count is fact specific and all elements are present.
*32 ¶ 15. Simoneaux waived arraignment on the second indictment, but admitted in the signed waiver that he had been served a copy of the indictment. He then decided to forgo trial and plead guilty to each of the six charges.
¶ 16. At his plea hearing, Simoneaux was placed under oath. The trial court identified the specific charges against him, and Simoneaux verified that he wanted to withdraw his not-guilty pleas and to plead guilty to each of the offenses:
The Court: Your attorney has announced that you wish to withdraw the not-guilty pleas made earlier to sexual battery, sexual abuse of a vulnerable adult, burglary, attempted burglary, and voyeurism — two counts of that — -and plead guilty at this time. Is that your desire?
Defendant Simoneaux: Yes, sir.
¶ 17. The trial judge further assured that Simoneaux reviewed the indictments, elements of each offense, discovery materials and police reports with his attorney:
The Court: Did [your attorney] go over the indictments with you and the elements of the crimes?
Defendant Simoneaux: Yes, sir.
[[Image here]]
The Court: Did he go over the discovery materials provided by the District Attorney’s file?
Defendant Simoneaux: Yes, sir.
The Court: Case reports and police reports and what not?
Defendant Simoneaux: Yes, sir.
The Court: Has he answered all of your questions?
Defendant Simoneaux: Yes, sir.
¶ 18. The trial judge also advised Simo-neaux that he faced the maximum penalty of eighty-two years’ imprisonment, which Simoneaux acknowledged that he understood. In addition, Simoneaux advised the court that he was also aware that a guilty plea to the five offenses waived his rights and placed him in a position to be sentenced to the statutory máximums. The record reflects Simoneaux assured the trial court that he was voluntarily pleading guilty:
The Court: Has anyone threatened, abused, or promised you anything to cause you to want to plead guilty?
Defendant Simoneaux: No, sir.
The Court: Are you pleading guilty because you are guilty, and for no other reason?
Defendant Simoneaux: Yes, sir.
¶ 19. He also acknowledged that he had been fully advised of his rights, and he was satisfied that if the case proceeded to trial, the State would be able to prove him guilty of all charges:
The Court: Are you satisfied that the State can prove beyond a reasonable doubt that you are guilty?
Defendant Simoneaux: Yes, six*.
The Court: Have you fully understood all of your rights? [3]
Defendant Simoneaux: Yes, sir.
The Court: How do you plead?
Defendant Simoneaux: Guilty.
¶ 20. In order for a guilty plea to be accepted, the record must contain “enough that the court may say with confidence the prosecution could prove the accused guilty of the crime charged.” Corley, 585 So.2d at 765. The two indictments *33 provided detailed factual accounts of each crime, and while under oath, Simoneaux assured the trial court he had reviewed the indictments with his attorney. Concerning police investigative reports, the record excerpts provided by Simoneaux contain a “Physical Evidence Inventory,” which identifies a search warrant for 1007 Old Hwy 24, the residence listed by Simoneaux as his address on his “Know Your Rights Before Pleading Form.” The evidence inventory sheet reflects that the McComb Police Department recovered a footlocker, XXX photographs, panties, condoms, an 8mm reel to reel player, a XXX DVD, as well as cameras, a wig, and a machete. It also contains a reference to a taped confession. We note that Simoneaux swore to the court that before entering his guilty plea, he had reviewed the case reports and police reports with his attorney.
¶ 21. He also assured the court that he believed the State could prove him guilty of the following specific offenses as described by the trial court: “sexual battery, sexual abuse of a vulnerable adult, burglary, attempted burglary, and voyeurism— two counts of that....” When asked by the trial judge whether he had anything to say before sentencing, Simoneaux told the judge that he has “had problems for a long time” and that he wanted help.[4]
¶ 22. There is little doubt that the problems Simoneaux spoke of relate to his tendency to commit sex-based offenses, or as the trial court later put it, “this tendency to do such as what you have done.” In fact, during his sentencing, the judge ordered that Simoneaux receive counseling for the “sexual offenses and for the tendency to commit sexual offenses.” The trial judge also mentioned the “provisions of the sex[-]offense act, that [I] am attaching to the Know-Your-Rights” form. It is also important to note that at no time during the plea hearing or sentencing did Simoneaux offer any hint of hesitancy or ever waiver from his admissions of guilt. Also, the record reflects that Simoneaux’s own mother specifically requested that he be incarcerated in a “facility for sex offenders.”
¶ 23. We are not considering a bare-bones drug indictment as we did in Aucoin v. State, 17 So.3d 142 (Miss.Ct.App.2009). Rather, the indictments to which Simo-neaux pled guilty are almost speaking in nature. The individual counts set forth in each charging document contain a heavy dose of the graphic facts underlying each count. Furthermore, the record reflects that the trial judge specifically asked Si-moneaux if he had reviewed these very indictments with his attorney, and Simo-neaux assured the judge that he had. The trial court and Simoneaux were both satisfied that the State could prove Simoneaux guilty beyond a reasonable doubt. There were no amendments to either indictment, nor were any superseding indictments returned by the grand jury. There is simply nothing in the record that would even permit the slightest inference that either Si-moneaux or the trial court believed that Simoneaux was pleading guilty to some other unnamed or uncharged conduct.
¶ 24. Considering the record as a whole, as we are instructed to do, Simo-neaux’s assurances to the trial judge that he had reviewed the two factually-specific indictments and discovery with his lawyer, along with his unwavering declaration of guilt to each of the specific crimes during his plea hearing, and his exchange with the trial judge about his sex-related problems, tendencies, and need for help, we simply cannot find that the trial court erred in *34 denying Simoneaux’s petition for post-conviction relief on this ground.

B. The Elements of the Offense

¶ 25. Next, Simoneaux claims his guilty pleas were involuntary because there was no proof in the record that the elements of the offenses for which he was charged were ever explained to him. Si-moneaux cites our decision in Jones v. State, 936 So.2d 993 (Miss.Ct.App.2006) in support of his argument. In Jones, we reversed a trial court’s denial of a motion for post-conviction relief sought by a defendant who claimed his guilty plea was not voluntarily, knowingly, and intelligently entered because he claimed he was not informed of the elements of the offense. Id. at 994(¶ 3). However, Jones appears to be limited to situations in which “boilerplate language in a plea petition” is used to attempt to show that a defendant understood the nature and elements of the crime for which he is admitting guilt. Id. at 998(¶ 19).
¶ 26. The specific question in Jones, was “may ‘counsel’s assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty" ... be shown by form language in a plea petition, that is not confirmed by questioning in the hearing and appears on a petition in which the elements of the offense are not stated?” Id. at 997(¶ 14). Our answer was no. Id. at 998(1119).
¶ 27. In Jones, we held that based on the United States Supreme Court’s reasoning in Bradshaw v. Stumpf, 545 U.S. 175, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005), the boilerplate assurance in a plea petition is not enough. Id. Instead, during a plea hearing, “a trial court must assure itself that a defendant understands the nature and elements of the crime for which he is admitting guilt.” Id. at 994(¶ 6) (citing Stumpf, 545 U.S. at 183, 125 S.Ct. 2398) (internal citations omitted).
¶ 28. In the present case, during his change of plea hearing, the trial court assured, through questioning at the plea hearing, that the charges and elements of each offense were explained to Simoneaux by his attorney and that Simoneaux understood the charges:
The Court: Did [your lawyer] go over the indictments with you and the elements of each crime.
Defendant Simoneaux: Yes, sir.
The Court: Do you understand the elements of the crimes?
Defendant Simoneaux: Yes, sir.
¶ 29. The United States Supreme Court has “never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel.” Stumpf 545 U.S. at 183, 125 S.Ct. 2398. Here, we are not considering a boilerplate plea petition like we did in Jones. Instead, we are faced with specific, sworn-to-on-the-record assurances by Simoneaux to the court that he not only reviewed the indictment with his attorney, but that his attorney also explained the elements of each crime to him. It has long been held that “[sjolemn declarations in open court carry a strong presumption of verity.” Baker v. State, 358 So.2d 401, 403 (Miss.1978). Accordingly, we find the trial court did not err in accepting Simoneaux’s sworn declaration that he understood the elements of the charged offenses.
II. Whether Simoneaux’s Counsel was Constitutionally Ineffective
¶ 30. For Simoneaux to establish an ineffective assistance of counsel *35 claim, he must demonstrate: (1) his attorney’s performance was deficient and (2) this deficiency deprived him of a fair trial. Beene v. State, 910 So.2d 1152, 1155(¶ 10) (Miss.Ct.App.2005) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We are instructed to assess the totality of the circumstances in determining whether counsel’s assistance was effective. Wiley v. State, 750 So.2d 1193, 1199(¶ 11) (Miss.1999). There is a strong, but rebuttable, presumption that an attorney’s performance falls within the wide range of reasonable professional assistance. Rankin v. State, 636 So.2d 652, 656 (Miss.1994). To establish prejudice, the claimant must demonstrate that, but for his attorney’s errors, there is a reasonable probability that a different outcome would have occurred. Id.
¶ 31. Simoneaux argues that his original counsel was deficient because he: (1) failed to file certain pretrial motions, (2) failed to adequately investigate conflicting evidence, and (3) allowed him to plead guilty when no factual bases were established.
¶ 32. Simoneaux asserts that various motions for discovery, to require independent forensic testing, and to quash the indictment on double jeopardy grounds should have been filed by counsel. He claims that his attorney’s failure to file such motions rendered him ineffective. The supreme court has instructed, “ ‘counsel’s failure to file certain motions, call certain witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy’ and do not give rise to an ineffective assistance of counsel claim.” Pruitt v. State, 807 So.2d 1236, 1240(¶ 8) (Miss.2002) (quoting Cole v. State, 666 So.2d 767, 777 (Miss.1995)). Simoneaux’s attorney heard testimony from a victim at a preliminary hearing and reviewed the discovery with Simoneaux. Based on his client’s acknowledgment of guilt and the reprehensible nature of the crimes charged, it was well within his attorney’s discretion to size up the evidence and decide rather than file a litany of motions, that an early guilty plea to a package deal, which resolved each offense and contained an agreed upon recommendation for a twenty-five-year sentence best served his client’s interests. The trial court even questioned Simoneaux about his attorney’s course of conduct, and Simoneaux maintained that his attorney had answered all of his questions and that he was satisfied with his attorney’s representation. Therefore, we find that Simoneaux’s attorney’s decision to forgo motion practice in lieu of plea negotiations was neither deficient nor prejudicial.
¶ 33. Simoneaux next argues that his attorney’s performance was deficient because he failed to properly investigate allegedly conflicting evidence. This contention is based primai'ily on a sexual assault information sheet, which appears to be filled out by F.S.’s attending physician and nurse. There are two boxes on the form next to the question, “[w]as there penetration of: vagina.” The information sheet requires the medical provider to check either “attempted” or “successful.” Here the “attempted” box is checked.[5] Si-moneaux argues that because sexual battery requires penetration, and because a description of the assailant differed from Simoneaux’s alleged appearance, that “had this conflicting evidence been investigated and presented to the trial court, a conviction would have been less likely.”
¶ 34. In making this claim about the medical records, Simoneaux fails to point *36 out that the medical records also contained information that could reasonably be viewed as detrimental to his defense. In fact, the seventy-six-year-old victim told a law enforcement officer that she was “raped” while in the nursing home, and that her attacker “put his hand over [her] mouth and told [her] not to scream.” In addition, she described in detail how her attacker caused pain to her right thigh “from where he made [her] spread her legs.” The limited record excerpts provided by Simoneaux also show that a medical doctor diagnosed the victim as having suffered a sexual assault and urinary infection. We find that these documents potentially cut both ways.
¶ 35. In support of his ineffective assistance claim, Simoneaux cites the supreme court’s decision in Hannah v. State, 943 So.2d 20 (Miss.2006). In Hannah, the defendant pled guilty to manslaughter, a charge which stemmed from the death of her husband as a result of someone pouring boiling water on him. Id. at 23(¶ 3). After pleading guilty, Hannah later filed for post-conviction relief, claiming her plea was involuntary and that her counsel was ineffective. Id. at 24 n. 1. The trial court denied her petition for post-conviction relief, which was based in part on an allegation that her counsel should have investigated a statement by the victim, claiming his attacker was “another woman.” Id. at 24-25 (¶¶ 2, 8).
¶ 36. Hannah is readily distinguishable from the present case on at least two grounds. First, in Hannah, during the change of plea proceeding, when asked if she agreed with the evidence against her, the defendant stated, “... no, I didn’t. But yeah, I heard what he said.” Id. at 26(¶ 14). Although, the defendant eventually admitted her guilt after a short recess, the supreme court found the voluntariness of her plea was in doubt. Id. at 27(¶ 19). Second, “Hannah continued to maintain during sentencing that she was not guilty and offered speculation as to who might have thrown the boiling water on the victim.” Id. at 27(¶ 17). Here, Simoneaux did not offer a hint of hesitancy at any time during his plea hearing or sentencing, nor did he attempt to blame the crime on an other individual. Instead, he readily admitted his guilt and informed the trial court that he has “had problems for a long time.” He even asked the trial court to provide help for his issues.
¶ 37. Though Simoneaux faced over eighty-years’ imprisonment, his attorney was able to negotiate a recommendation for what he described as a “flat sentence” of twenty-five years’ imprisonment. This package deal required that each count run concurrently to the next and resolved all six offenses. Simply put, Simoneaux’s attorney may have saved him from possibly spending the rest of his life in prison. When the potential lengthy term of incarceration is considered in totality with his attorney’s failure to make hay out of a couple of possibly helpful, but potentially damning, medical records, we cannot find that Simoneaux’s attorney’s performance was deficient. Nor can we conclude that by voluntarily entering a package plea agreement that Simoneaux was deprived of a fair trial.
¶ 38. Simoneaux finally argues that his counsel was ineffective for allowing him to plead guilty when no factual bases for his pleas existed. Having concluded the trial court did not err in denying his requested post-conviction relief on this ground, we find no merit to this claim.
III. Whether Convictions for Sexual Abuse of a Vulnerable Adult and Sexual Battery Constitute Double Jeopardy
¶ 39. To determine whether sexual abuse of a vulnerable adult encompasses *37 the crime of sexual battery, we must examine the law regarding double jeopardy, the statutes at issue, and the respective language in the charging documents. The Fifth Amendment to the United States Constitution protects an accused against double jeopardy and is enforceable against the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Article 3, section 22 of the Mississippi Constitution guarantees that no person “shall be twice placed in jeopardy for the same offense.... ” This Court has previously held that:
Double Jeopardy consists of three separate constitutional protections. White v. State, 702 So.2d 107[, 109 (¶ 9) ] (Miss.1997). “It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.” Id. “The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.” Blockburger v. [United States], 284 U.S. 299[, 52 S.Ct. 180, 76 L.Ed. 306] (1932).
Jordan v. State, 936 So.2d 368, 374(¶ 32) (Miss.Ct.App.2005) (emphasis added).
¶ 40. Recently, in Branch v. State, 998 So.2d 411, 416(¶ 20) (Miss.2008), the supreme court considered whether an indictment that charged both the lustful touching of a child under fourteen years of age and statutory rape violated double jeopardy. The supreme court found that they did not. Id. at 418(¶ 28). In analyzing the two crimes, the court considered the elements of each offense and found that the crime of statutory rape required proof of additional elements:
The crime of gratification of lust does not require any proof of sexual intercourse or proof of a laceration/tearing of the child’s genitalia. As such, statutory rape requires proof of an additional element not required by gratification of lust. Pursuant to Jordan v. State, there is no double jeopardy in this case because statutory rape requires proof of an additional fact. See Jordan v. State, 936 So.2d 368 (Miss.Ct.App.2005). Therefore, the trial court properly denied Branch’s motion for a directed verdict, as the crime of statutory rape does not encompass the crime of gratification of lust.

Id.

¶ 41. Likewise, in the current case, the crime of abuse of a vulnerable adult and the crime of sexual battery require additional and different elements of proof. Mississippi Code Annotated section 97-3-95(l)(a) (Rev.2006) provides in pertinent part:
(1) A person is guilty of sexual battery if he or she engages in sexual penetration with:
(a) Another person without his or her consent....
(Emphasis added).
¶ 42. Whereas, the Mississippi Vulnerable Adults Act provides that “[a]ny person who willfully inflicts physical pain or injury upon a vulnerable adult shall be guilty of felonious abuse or battery, or both, of a vulnerable adult....” Miss.Code. Ann. § 43^7-19(3). This Act defines abuse to include the “nonaccidental infliction of physical pain, injury or mental anguish on a vulnerable adult,” including “sexual abuse.” Miss.Code Ann. § 43-47-5(a) (Supp.2008). Mississippi Code Annotated section 43-47-5(n) (Supp.2008) defines the term “vulnerable adult” as:
a person ... whose ability to perform the normal activities of daily living or to provide for his or her own care or pro *38 tection from abuse, neglect, exploitation or improper sexual contact is impaired due to ... the infirmities of aging. The term “vulnerable adult” also includes all residents or patients, regardless of age, in a care facility for the purposes of [s]ections 43-47-19 and 43-47-37 only.
¶ 43. In examining the two complained of charges, we note that each offense contains an element lacking in the other. Like Branch, here the charged crimes require different elements of proof, namely penetration. Branch, 998 So.2d at 418(¶ 28). The crime of abuse of a vulnerable adult does not require proof of penetration. Miss.Code. Ann. § 43-47-19(3). But the crime of sexual battery does require this extra element. Miss.Code Ann. § 97-3-95(1). Additionally, abuse of a vulnerable adult requires proof that the defendant willfully inflicted physical pain or injury upon a vulnerable adult. Miss. Code. Ann. § 43-47-19(3). Where sexual battery has no such requirement. Miss. Code Ann. § 97-3-95. The differences do not stop there. The crime of sexual battery does not require that the victim’s abilities to provide for his or her protection from sexual contact be impaired by “the infirmities of aging” or under the alternatively-charged definition applicable here— that the person is a patient or resident, of a care facility. Miss.Code Ann. § 43-47-5(a), (n). Clearly, the charge of abuse of a vulnerable adult requires this additional element. Miss.Code. Ann. § 43-47-19(3).
¶ 44. While both offenses stem from the same act, we find that because the charges require different elements of proof there is no double jeopardy violation.
IV. Whether the Banishment Provision in Simoneaux’s Sentence Is Unconstitutional and Illegal As Applied
1Í 45. Simoneaux claims the trial court rendered an unconstitutional and illegal sentence when it ordered that he be banished from Mississippi upon his release from prison. Although he argues there is nothing in the record to justify the sentence, he neglects to point out that the banishment provision was part of what appears from the record to be an agreed upon sentencing recommendation to the tidal court.
¶46. Initially, the State recommended the various terms of imprisonment for each count. The prosecutor then advised the court, “[a]lso, the same recommendations — get Mental Health evaluation, follow it, be ordered to follow it, and leave the State of Mississippi upon the completion of his sentence.” Simoneaux did not object to the banishment recommendation. Instead, his main concern appeared to be making sure the court was aware of the State’s agreement to make a sentencing recommendation of twenty-five years, with all six counts to be served concurrently. As his defense attorney put it, “just for the record, we summed this up as a 25-year flat sentence.”
¶ 47. In response to the trial court’s request that Simoneaux’s attorney advise him about the requirement that he register as a sex offender, the following exchange occurred:
The Court: The Mississippi Code requires on a sex offender that a copy of the Code be attached to your Know-Your-Rights. And to make sure we do everything right, Mr. Luckett, if you would, go over the provisions with him and then attach it to it and then bring him back.
Mr. Luckett: The ex offender, yes sir. He is already registered in both states.
The Court: He is?
*39 Mr. Luckett: Is that right, Mr. Simo-neaux?
Defendant Simoneaux: Louisiana and Mississippi.
The Court: Go over ours with him again and then bring him back.
¶ 48. Also, before sentencing, Simo-neaux told the court, “I have had problems for a long time, and I would greatly appreciate as much help for myself as possible, prior to my release and after my release from MDOC.” In fashioning an appropriate remedy, the court ordered that Simo-neaux be examined by a psychiatrist at the MDOC and that “he receive such psychiatric care as available to him for sexual offenses and for the tendency to commit sexual offenses.” The trial court then ordered that upon Simoneaux’s release, he be banned from the State of Mississippi. Neither Simoneaux nor his attorney objected to this request. Indeed, Simo-neaux’s only response was whether he would have time to settle his affairs in Mississippi before he was banished.
¶ 49. We acknowledge that Mississippi appellate courts have held banishment to be permissible. See Cobb v. State, 437 So.2d 1218, 1220 (Miss.1983) (affirming the probation condition that defendant stay at least 125 miles away from Stone County), Watts v. State, 1 So.3d 886, 887, 889-90 (¶¶ 2, 10) (Miss.Ct.App.2008), cert. denied, 999 So.2d 1280 (Miss.2009) (banishment from 100 miles of Forrest County Courthouse affirmed). However, in crafting banishment provisions, trial courts are required to make on the record findings that the banishment bears a reasonable relationship to the probation and that the ends of justice and best interests of the defendant and the public would be served by this punitive measure. Hamm v. State, 758 So.2d 1042, 1047(¶ 14) (Miss.App.2000). Also, trial judges must make certain that public policy is not violated and that the rehabilitative purpose of probation is not defeated. Id.
¶ 50. Though it appears from the record that Simoneaux’s banishment from Mississippi was part of an agreed upon sentencing recommendation, the practice of dumping defendants on other jurisdictions has been held improper by the Mississippi Supreme Court and federal courts on public policy grounds. See McCreary v. State, 582 So.2d 425, 427-28 (Miss.1991); United States v. Abushaar, 761 F.2d 954, 959-60 (3rd Cir.1985).
¶ 51. While banishing Simoneaux from Mississippi would perhaps provide a degree of protection to the citizens of our state, we certainly do not want our sister states repaying us for the favor. Accordingly, we find the reasoning in McCreanj and Abushaar applicable and order the banishment provision stricken from Simo-neaux’s sentence. The other provisions of his concurrent sentences shall remain in full effect.
V. Whether Simoneaux Is Entitled to Credit Against His Sentence for Time Spent Incarcerated
¶ 52. Time spent in incarceration pending conviction should be applied to a defendant’s sentence. Mississippi Code Annotated § 99-19-23 (Rev.2007) provides:
The number of days spent by a prisoner in incarceration in any municipal or county jail while awaiting trial on a criminal charge, or awaiting an appeal to a higher court upon conviction, shall be applied on any sentence rendered by a court of law or on any sentence finally set after all avenues of appeal are exhausted.
¶ 53. While we agree that Simoneaux should receive credit for time served prior to the imposition of his sentence, “a post- *40 conviction relief pleading is not the proper means to calculate and receive credit for the initial ... time served.” Murphy v. State, 800 So.2d 525, 527(¶ 10) (Miss.Ct.App.2001). Simoneaux “should send such requests to the proper authorities within the Mississippi Department of Corrections!”] administrative system. If he is denied the proper relief, or credit for time served, by the administrative system, he should then turn to the courts to seek remedy.” Id. at 527-28(¶ 10). This allegation of error is without merit.
¶ 54. Accordingly, we affirm the trial court’s denial of Simoneaux’s motion for post-conviction relief on each asserted ground with the exception of the banishment provision of the sentencing order, which we strike.
¶ 55. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY DENYING THE PETITION FOR POST-CONVICTION RELIEF IS AFFIRMED AS MODIFIED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.
LEE AND MYERS, P.JJ., AND ISHEE, J., CONCUR. IRVING, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION. ROBERTS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., GRIFFIS AND BARNES, JJ., AND JOINED IN RESULT ONLY BY CARLTON, J.

. More specifically, the trial judge imposed the following sentences: (1) sexual battery-thirty years with twenty-five years to serve, day for day, and five years suspended followed by five years of post-release supervision, (2) sexual abuse of a vulnerable adult-ten years with eight years to serve and two years suspended followed by five years of post-release supervision, (3) burglary of a dwelling-twenty years followed by five years of post-release supervision, (4) attempted burglary-seven years with six years to serve and one year suspended followed by one year of post-release supervision, (5) each of the two voyeurism counts-five years with four years to serve and one year suspended followed by one year of post-release supervision. Simo-neaux's sentences were ordered to run concurrently with one another.

. Due to the sensitive nature of the facts of this appeal, we substitute initials for the victims to protect their privacy and maintain their anonymity. However, the names of the victims were specifically stated in both of the subject indictments.

. Simoneaux was also advised of his other constitutional rights, which he acknowledged that he understood. Because he only challenges the voluntariness of his guilty pleas, and the alleged lack of an adequate factual bases and elements, the remaining plea colloquy will not be discussed.

. The record reflects that Simoneaux was already a registered sex offender in Louisiana and Mississippi as of the date of the subject guilty pleas.

. The record is unclear as to whom checked the box.